1  CHRISTOPHER WARD, CA Bar No. 238777
       cward@foley.com
2  FOLEY & LARDNER LLP
   555 SOUTH FLOWER STREET, SUITE 3300
3  LOS ANGELES, CA 90071-2418
   TELEPHONE: 213.972.4500
4  FACSIMILE:  213.486.0065

5  KEVIN JACKSON, CA Bar No. 278169
       kjackson@foley.com
6  FOLEY & LARDNER LLP
   11988 EL CAMINO REAL, SUITE 400
7  SAN DIEGO, CA 92130-2594
   TELEPHONE: 858.847.6700
8  FACSIMILE:  858.792.6773

9  Attorneys for Defendants AIRCRAFT SERVICE
   INTERNATIONAL, INC.; MENZIES AVIATION
10 (USA), INC.; TRACY AGUILAR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEARY SHA, an individual,<br><br>                                   Plaintiff,<br><br>     vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; MENZIES AVIATION (USA), INC., a Delaware corporation; TRACY AGUILAR, an individual; and DOES 1 through 50, inclusive,<br><br>                                   Defendants. | Case No. 3:24-cv-01738<br><br>**DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC.'S NOTICE OF REMOVAL OF ACTION 28 U.S.C. § 1332 (DIVERSITY JURISDICTION)**<br><br>Filed concurrently with:<br><br>i.  Declaration of Kevin Jackson;<br>ii. Declaration of Talin Bazerkanian;<br>iii. Civil Cover Sheet;<br>iv. Certification of Conflicts and Interested Entities or Persons;<br>v.  Disclosure Statement;<br>vi. Certificate of Service |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Aircraft Service International, Inc. ("ASI"), pursuant to 28 U.S.C. sections 1332, 1441 and 1446, hereby invokes this Court's jurisdiction and removes the above-captioned case, pending in the Superior Court of the State of California, County of San Francisco, Case No. CGC-23-606989, to the United States District Court for the Northern District of California on the following grounds:

1. On June 9, 2023, Plaintiff Geary Sha ("Plaintiff") commenced this action by filing a Complaint in the Superior Court of the State of California, County of San Francisco entitled "GEARY SHA, an individual vs. AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; MENZIES AVIATION (USA), INC., a Delaware corporation; TRACY AGUILAR, an individual; and DOES 1 through 50, inclusive," Case No. CGC-23-606989. A true and correct copy of Plaintiff's Complaint is attached to the Declaration of Kevin Jackson as **Exhibit A**. (Declaration of Kevin Jackson ("Jackson Decl."), ¶ 2 Ex. A ("Complaint").)

2. On June 14, 2023, Menzies Aviation (USA), Inc. ("Menzies") and Tracy Aguilera ("Aguilera") [1], through counsel, each received a copy of the Complaint and a Notice and Acknowledgment of Receipt. True and correct copies of each Notice and Acknowledgment of Receipt are attached to the Declaration of Kevin Jackson within **Exhibits B** and **C**. (Jackson Decl., ¶ 3, Exs. B-C)..

3. On or around June 15, 2023, ASI received service of the Complaint. (Declaration of Talin Bazerkanian ("Bazerkanian Decl."), ¶ 2; Jackson Decl., ¶ 4.

4. On July 5, 2023, Menzies and Aguilera, by and through counsel, each returned a completed Notice of Acknowledgment of Receipt, pursuant to California Code of Civil Procedure section 415.30. Conformed copies of the foregoing are attached to the Declaration of Kevin Jackson as **Exhibits D** and **E**. (Jackson Decl., ¶ 5 Exs. D-E.)

5. Plaintiff's Complaint alleges the following causes of action against ASI and Menzies: (1) Disability Discrimination in Violation of Cal. Gov. Code Section 12900 *et seq.*; (2) Harassment and

---

[1] Plaintiff erroneously named Tracy Aguilera as "TRACY AGUILAR." (Jackson Decl., ¶ 1, fn. 1.)

Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 *et seq*.; (3) Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code Section 12900 *et seq*.; (4) Retaliation in Violation of Cal. Gov. Code Section 12900 *et seq*.; (5) Wrongful Termination in Violation of Public Policy (Count I); and (6) Wrongful Termination in Violation of Public Policy (Count II). (*See generally*, Complaint.)

6. Of the six causes of action, Plaintiff only brings one claim against Aguilera—the Second Cause of Action for Harassment and Hostile Work Environment. (Complaint, ¶¶ 47-58.)

7. Based on the face of the Complaint, Defendants were not on notice that the case was removable and thus did not remove to this Court at this time because complete diversity was not present and Menzies did not have any ability to evaluate fraudulent joinder at that time. (S*ee* discussion at Sections I.C and II.A, *infra*.)

8. On August 4, 2024, ASI, Menzies, and Aguilera (collectively, "Defendants") issued a Notice of Deposition of Plaintiff for September 19, 2023, at 10:00 a.m., and subsequently met and conferred with Plaintiff's counsel to ultimately select a mutually-agreeable deposition date of February 6, 2024. A true and correct copy of the Notice of Deposition for February 6, 2024 is attached to the Declaration of Kevin Jackson as **Exhibit F**. (Jackson Decl., ¶ 6, Ex. F.)

9. On February 6, 2024, Defendants took the first session of the deposition of Plaintiff. (Jackson Decl., ¶ 8.)

10. On February 19, 2024, Defendants' counsel received a certified transcript of Plaintiff's February 6, 2024 deposition session. (Jackson Decl., ¶ 9.) A true and correct copy of the transmittal letter regarding the same is attached to the Declaration of Kevin Jackson as **Exhibit H**. (Jackson Decl., ¶ 9 Ex. H.) True and correct copies of relevant excerpts from the certified transcript of Plaintiff's deposition are attached to the Declaration of Kevin Jackson as **Exhibit I**. (Jackson Decl., ¶ 10, Ex. I.)

11. Upon receipt of Plaintiff's certified deposition transcript, Defendants became aware that there is no possibility that Plaintiff can establish a cause of action against Aguilera, making it clear that Plaintiff has fraudulently joined Aguilera as a "sham defendant" in an improper attempt to avoid diversity jurisdiction. (*See* discussion at Sections I.C and II.A, *infra*.)

12. This Action is now, after Plaintiff's first deposition session, definitely one over which

this Court has original jurisdiction pursuant to 28 U.S.C. section 1332 and may be removed to this Court pursuant to 28 U.S.C. section 1441 because it is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

13. This action was not commenced in state court more than one year before the date of removal. *See* 28 U.S.C. § 1446(c)(1).

14. No previous notice of removal has been filed in this case.

15. A true and correct copy of the state court docket in the Superior Court of the State of California, County of San Francisco, is attached to the Jackson Declaration as **Exhibit K**.

16. Pursuant to 28 U.S.C. section 1446(a), true and correct copies of all process and pleadings filed with the San Francisco Superior Court are attached to the Jackson Declaration as **Exhibit L**.

17. Pursuant to 28 U.S.C. sections 84(a) and 1441(a), the United States District Court for the Northern District of California embraces the county in which the Complaint was pending and, thus, this Court is the proper forum for removal.

18. Pursuant to 28 U.S.C. section 1446(a), Menzies and Aguilera are represented by the same counsel as ASI and consent to the removal.

I.  **THIS ACTION IS SUBJECT TO REMOVAL ON THE BASIS OF COMPLETE DIVERSITY JURISDICTION**

   A.  **Plaintiff is a Citizen of California**

19. At the time of the filing of the action and at the time of filing this Notice of Removal, Plaintiff was and still is a citizen of California, inasmuch as Plaintiff alleges that he "is, and at all relevant times was, a resident of Vallejo, California." (*See* Complaint at ¶ 1.) For purposes of assessing diversity jurisdiction, Plaintiff is a citizen of the State of California. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (holding that for diversity purposes, a person is a citizen of the state in which they are domiciled).

   B.  **ASI and Menzies are Non-California Citizens**

20. For the purposes of diversity of citizenship, a corporation is a citizen of every state or foreign country where it is incorporated and where it has its principal place of business. *See* 28 U.S.C. §

1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (holding principal place of business for purposes of citizenship "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

21. ASI is a Delaware corporation with its principal place of business in Grapevine, Texas. (Bazerkanian Decl., ¶ 3  Plaintiff admits the same. (Complaint at ¶ 2.) Accordingly, ASI is a resident of Delaware and Texas and no other state for purposes of diversity jurisdiction.

22. Menzies is a Delaware corporation with its principal place of business in Grapevine, Texas. (Bazerkanian Decl., ¶ 3. Menzies' principal place of business was previously in Fort Worth, Texas. (Bazerkanian Decl., ¶ 3. Plaintiff admits that Menzies is a Delaware corporation and avers that Menzies' principal place of business is located in Fort Worth, Texas. (Complaint at ¶ 3.) Accordingly, Menzies is a resident of Delaware and Texas and no other state for purposes of diversity jurisdiction.

    **C.**  **The Citizenship of Aguilera and the Doe Defendants Should be Disregarded**

23. The Complaint names Aguilera as a defendant in the Second Cause of Action for Harassment and Hostile Work Environment under the California Fair Employment and Housing Act (the "FEHA"). (Complaint at ¶¶ 4, 12-32, 47-58.) While Plaintiff alleges Aguilera is a resident of California, "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)).

24. Under the Ninth Circuit's approach to fraudulent joinder, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent," meaning that the defendant's citizenship may be ignored for diversity purposes. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In other words, the removing defendant must show that the resident defendant joined in the action "cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotation marks and citation omitted; emphasis in original).

25. "[I]n determining whether a removing defendant has met its burden, courts may consider not only the plaintiff's complaint (plus matters referenced therein and/or subject to judicial notice) but also additional 'summary judgment type evidence.'" *FullStory, Inc. v. N. Am. Capacity Ins. Co.*, No. CV 22-7344-GW-ASX, 2023 WL 371779, at *2 (C.D. Cal. Jan. 6, 2023) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Morris*, 236 F.3d at 1068 (citing *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995))). As demonstrated below, there is no possibility that Plaintiff can establish a cause of action against Aguilera, and as a result, Aguilera's citizenship is of no consequence to the determination of complete diversity for this removal.

26. The Complaint also names Defendant Does 1 through 50. Pursuant to 28 U.S.C. section 1441(b)(1), the citizenship of these defendants is disregarded.

### i. There is No Possibility Plaintiff Can Establish a Cause of Action Against Aguilera

27. Plaintiff's only claim against Aguilera is for hostile work environment harassment in violation of the FEHA. The FEHA makes it unlawful for an employer or any other person because of, *inter alia*, physical disability, "to harass an employee . . . ." Cal. Gov't Code § 12940(j)(1). To establish a prima facie case of hostile work environment harassment, a plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment. *Villalobos v. Costco Wholesale Corp.*, No. 223CV00622DJCJDP, 2023 WL 5108499, at *4 (E.D. Cal. Aug. 9, 2023) (citing *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563 (2019)). Aguilera's conduct, as alleged by Plaintiff and as described by Plaintiff at deposition, is not the type of conduct that can be properly characterized as actionable harassment and there is no other basis for Plaintiff to assert personal liability against Aguilera.

28. Although an individual may be liable for harassment in violation of California Government Code section 12940, the type of conduct that qualifies as actionable harassment, rather than discrimination, is narrowly circumscribed. *See Miller v. Department of Corrections*, 36 Cal. 4th 446, 461 n. 5 (2005); *Reno v. Baird*, 18 Cal. 4th 640, 645-46 (1998); *Janken v. GM Hughes Elecs.*, 46 Cal.

App. 4th 55, 63 (1996). "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) (emphasis in original). "Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno*, 18 Cal. 4th at 646; *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 879 (2010); *Janken*, 46 Cal. App. 4th at 63. By contrast, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Reno*, 18 Cal. 4th at 646-47; *Janken*, 46 Cal. App. 4th at 64-65. Because "[m]aking personnel decisions is an inherent and unavoidable part of the supervisory function," such personnel decisions cannot provide a basis for individual liability. *Reno*, 18 Cal. 4th at 646-47. Therefore, any conduct that involves the exercise of personnel management authority delegated by an employer cannot constitute harassment. *Janken*, 46 Cal. App. 4th at 64.

29. Here, Plaintiff's Complaint and deposition testimony evidence that all of Aguilera's purported actions were ***ordinary personal management actions*** which are insufficient as a matter of law to give rise to a claim for harassment against an individual. In relevant part, Plaintiff alleges the following against Aguilera, a Human Resources Manager:

> Defendants harassed Plaintiff via the actions of Aguilar, who acting in her capacity as an agent and employee of ASI and Menzies, repeatedly (i) sought to obstruct Plaintiff's return to work, (ii) continually threatened Plaintiff with his 'voluntary resignation' despite multiple written statements from Plaintiff that he would not resign, (iii) gave Plaintiff unrealistic deadlines for which to decide whether to take over a 50% pay cut or relocate his family across or to another country, (iv) ignored and failed to investigate Plaintiff's claim of disparate treatment based upon his disability/medical leave, and (v) instead responded by terminating Plaintiff's employment.

(Complaint at ¶¶ 4, 53.)

30. Based on the face of the Complaint, it was ambiguous what Plaintiff meant by his allegation that Aguilera "repeatedly . . . sought to obstruct [his] return to work," which necessitated his

deposition.  Most critically, Plaintiff (who worked in a position of *superior* authority to Aguilera), admitted at deposition that he believes Aguilera did not have authority to even make a termination decision, that he did not know the reason Menzies terminated his employment, and that Aguilera was simply performing her regular duties as a Human Resources Manager with respect to her communications to him regarding the company's decision.  (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 89:11-94:8; 97:12-99:17; 106:8-13; 165:9-166:9; 207:17-208:17.)

31. At deposition, when asked what specifically Plaintiff believed constituted Aguilera's efforts to "obstruct [his] return to work" Plaintiff testified: "Well, she . . . used [the] word 'voluntary resignation' every time.  I felt threaten[ed] because I don't resign, at all, or voluntary resign."  (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 206:25-207:7.)  Aguilera's purported "threat[s]" regarding "voluntary resignation" cannot support a harassment claim as a matter of law.  *See Lewis v. UPS, Inc.*, 252 F. App'x 806, 808 (9th Cir. 2007) (threat of termination cannot be analyzed as harassment because it is a personnel-management action).  Moreover, Plaintiff admitted that (1) to be entitled to job protection upon return from his leave of absence, he would have needed to return to work before his FMLA/CFRA leave expired, (2) he understood he had exhausted his entitlement to FMLA/CFRA leave as of May 6, 2022, (3) as of May 7, 2022, he understood he did not have job protection rights such that return to his General Manager position was not guaranteed, (4) he did not return from leave until December 20, 2022, by which point his General Manager position had been eliminated, and (5) upon his return, he refused vacant positions at the San Francisco location and to be considered for available manager-level positions outside California.  (Jackson Decl., ¶ 9, Ex. H, Sha Dep. Tr. at 116:12-16, 128:5-8, 129:9-14, 156:5-9, 166:3-14, 171:20-172:1, 173:5-8, 178:21-179:3, 181:1-5, 187:8-189:3, 191:8-25.)  Accordingly, the underlying context—that Plaintiff refused work following an unprotected leave of absence and elimination of his position—illustrates that Aguilera's purported comments as a Human Resources Manager regarding "voluntary resignation" are part-and-parcel of personnel management decisions. Moreover, the characterization of Plaintiff's separation is simply a personnel management action, not harassing conduct or statements attributable to any protection classification or activity.

32. The same is true of Plaintiff's allegations that Aguilera purportedly gave Plaintiff "unrealistic deadlines."  Aguilera gave Plaintiff multiple days to accept available positions at the San

Francisco location or to consider management-level positions (which he requested) at other locations. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 158:11-15, 167:19-168:11, 182:5-12; Jackson Decl., ¶ 10-11, Ex. I-J, Sha Dep. Ex. 22.) Again, this occurred after his position had been eliminated and following his return from a non-job-protected leave of absence, and is part and parcel of "commonly necessary personnel management actions such as hiring and firing, job or project assignments, [etc.]." *Janken*, 46 Cal. App. 4th at 64-65; (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 128:5-8, 129:9-14, 166:3-14.)

33. Taking Plaintiff's allegations together with his testimony, Aguilera's conduct cannot support a claim for individual liability as a matter of law. *See Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085 RMW, 2009 WL 10692955, at *4 (N.D. Cal. Nov. 5, 2009) (denying motion to remand where plaintiff asserted harassment claim against human resources supervisor as there were "no facts pleaded to suggest [defendant's] acts were out of meanness or bigotry nor [were] there any allegations that [defendant] made derogatory or ageist comments"—rather, "[a]t most plaintiff ha[d] pleaded facts that show [defendant] acted outside the scope of her authority while in her role as the human resources representative"); *Velente-Hook v. E. Plumas Health Care*, 368 F. Supp. 2d 1084, 1102-04 (E.D. Cal. 2005) (granting summary judgment for employer on disability/medical condition harassment claim where plaintiff alleged, *inter alia*, that employer "told her that she would be fired if she could not return to work due to her medical condition" and "forced the plaintiff to resign or risk further harm to her health," as the incidents plaintiff complained of, including the decision to require plaintiff to return to work, fell "within the scope of job duties of a type necessary to business and personnel management"); *compare with Miller*, 36 Cal. 4th at 451 (plaintiffs stated a prima facie case of harassment by alleging that promotions and favorable job assignments were given to female employees involved in sexual relationships with a particular male supervisor, as "widespread" sexual favoritism could convey a "demeaning message" to female employees that they are viewed by management as "sexual playthings" or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management).

34. With respect to Plaintiff's contentions that Aguilera allegedly ignored and failed to investigate his claim of disparate treatment (which he made only *after* Menzies eliminated his position) and instead responded by terminating his employment, such incidents are commonly necessary

personnel actions insufficient to state a harassment claim as a matter of law. *See Cofer v. Parker-Hannifin Corp.*, 194 F. Supp. 3d 1014, 1021 (C.D. Cal. 2016) (dismissing hostile work environment harassment claim against supervisor where plaintiff alleged, *inter alia*, "his discrimination claims were not investigated" and he was terminated, as these official employment actions were personnel-related decisions insufficient to state a claim); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1330-31 (1996) (explaining that a supervisor's failure to address employee complaints is a personnel decision, not harassment). Indeed, Plaintiff admitted that Aguilera's communication of termination decisions to employees was an ordinary function of her position. (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 92:10-93:25.)

35. Plaintiff also testified to the scope of communications that he had with Aguilera, which forecloses his ability to amend the Complaint to state a claim for individual liability against Aguilera. Specifically, at deposition, Plaintiff confirmed the extent of his communications with Aguilera. (Jackson Decl., ¶ 10, Ex. I. Sha Dep. Tr. at 204:18-205:1, 205:11-24.) Plaintiff admitted that through December 13, 2022, he (1) had not formed an opinion that anyone at Menzies[2] harbored animus towards him because of his medical condition or need for time off, including Aguilera, and (2) could not identify any comments or statements that anybody from Menzies made to him that he found to be inappropriate remarks concerning his medical condition or need for time off. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 154:20-155:10.) Plaintiff then testified that, after December 13, 2022, his next communication with anyone at Menzies was when he returned on December 20, 2022. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 156:5-9.) Plaintiff's testimony regarding his communications with Aguilera on December 20, 2022 does not evince Aguilera made any hostile comments to Plaintiff nor any improper action attributable to Aguilera that sent a demeaning message to him or other employees. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 156:10-159:21; *compare with Asurmendi v. Tyco Elecs. Corp.*, No. C 08-5699 JF PVT, 2009 WL 650386, at *4 (N.D. Cal. Mar. 11, 2009) (granting motion to remand where plaintiff alleged harassment claim against former supervisor because the supervisor's alleged comments—"that [p]laintiff liked to do things 'the old fashioned way'—arguably were not necessary to any personnel

---

[2] As used during Plaintiff's deposition, the term "Menzies" referred to the corporate defendants generally in this case. (Jackson Decl., ¶ 1, Ex. A, Sha Dep. Tr. at 28:19-29:2.)

decisions that [the supervisor] was obligated to perform"). The same is true for Plaintiff's testimony regarding any communications he had with Aguilera thereafter. (*See generally*, Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 173:9-174:24, 176:2-191:25, 193:9-199:2, 203:10-15; Jackson Decl., ¶ 10-11, Ex. I-J, Sha Dep. Ex. 22). Accordingly, there is no possibility that Plaintiff can state a cause of action against Aguilera, such that Aguilera is a sham defendant and the Court must disregard her citizenship for purposes of this removal.

### D. The Amount in Controversy Requirement is Satisfied

36. From the face of the Complaint, the amount in controversy in this action exceeds $75,000.00, exclusive of interests and costs. Among other claims, Plaintiff alleges that ASI and Menzies discriminated and retaliated against him, harassed him, failed to prevent discrimination and harassment against him in the workplace, and wrongfully terminated his employment. (*See generally*, Complaint.) Plaintiff seeks compensatory, consequential, general, special, and punitive damages, attorneys' fees and cost of suit, and interest. (Complaint at Prayer for Relief.) Specifically:

    a. Plaintiff alleges that, as a result of Defendants' conduct, he "has suffered and continues to suffer . . . substantial losses in earnings and job benefits . . . ." (Complaint at ¶¶ 44, 56, 67, 76; *see also id*. at ¶¶ 84, 94, and Prayer for Relief.) Plaintiff alleges that he was "making over $100,000 per year" as a General Manager and his employment with Defendants ended "on or about January 3, 2023." (Complaint at ¶¶ 13, 24.) At the time of termination, Plaintiff was earning an annual salary of $108,000.00, equivalent to an hourly pay rate of approximately $51.92. (Bazerkanian Decl., ¶ 4.) Accordingly, Plaintiff's claim for "loss in earnings" alone, as of the date of removal, exclusive of any interest, amounts to approximately $130,838.40.[3] Furthermore, several district courts have adopted "[a] projected future trial date within a year of removal." *Ulloa v. Cal. Newspaper Partners*, No. LACV2011776JAKAGRX, 2021 WL 6618815, at *6-7 (C.D. Cal. Oct. 21, 2021) (collecting cases). Assuming a trial date sometime in March 2025 (12 months after removal), an estimate of Plaintiff's claim for "loss in earnings" amounts to approximately $238,832.00.[4]

---

[3] [$51.92 x 40 hours per week = $2,076.80 per week. There are 63 weeks between the end of Plaintiff's employment, January 3, 2024, and the date of removal, March 20, 2024. Accordingly, $2,076.80 per week x 63 weeks = $130,838.40.]

[4] [There are 115 weeks between the end of Plaintiff's employment, January 3, 2024, and a projected trial date one year from removal, March 20, 2025. Accordingly, $2,076.80 per week x 115 weeks =

    b. Plaintiff also alleges that, as a result of Defendants' conduct, he "has suffered and continues to suffer . . . humiliation, emotional distress, and physical and mental pain and anguish." (Complaint at ¶¶ 44, 56, 67, 76; *see also id.* at ¶¶ 85, 95, and Prayer for Relief.)  While the exact amount of Plaintiff's alleged emotional distress damages is not currently known, based on Plaintiff's allegations, such alleged damages are far more than nominal in character.

    c. Plaintiff also seeks punitive damages.  (Complaint at ¶¶ 46, 58, 69, 78, 86, 96, and Prayer for Relief.)  California courts have indicated that punitive damages may, conservatively, be two to three times the amount of compensatory damages.  *See, e.g., Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68 (2012) (approving $4.5 million in punitive damages following a $1.85 award for compensatory damages); *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999 (2012) (approving $2.4 million in punitive damages following a jury award of $804,000 in compensatory damages).  Applying a conservative 2:1 ratio, Plaintiff's claim for punitive damages, based on his claim for loss in earnings alone, amounts to $477,664.00 ($238,832.00 x 2).

    d. Plaintiff also seeks attorneys' fees in this matter, which are includable in the amount in controversy.  (Complaint at ¶¶ 45, 57, 68, 77, and Prayer for Relief); *Galt v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698, 701 (9th Cir. 2007) (holding that applying 12.5% of the total amount in controversy is a conservative estimate for attorneys' fees).  The total amount in controversy, as set forth in the paragraphs above, exceeds $716,496.00.  Accordingly, a reasonable estimate of Plaintiff's attorneys' fees is at a minimum $89,562.00 ($716,496.00 x 0.125).

  37. Moreover, Plaintiff's verified interrogatory responses evidence that the amount in controversy exceeds $75,000.00.  In response to an interrogatory requesting that Plaintiff "state each and every item of damages that [he] claim[s] [he] suffered by reason of the occurrences that form the subject matter of [his] COMPLAINT[,]" Plaintiff itemized the following amounts:

> 1) Lost past earnings: **$73,192** ($81,000 ($9,000 monthly salary x 9 months (January – September)) – $7,808 YTD earnings at new job).
> 2) Lost future earnings: **$1,254,000** [($108,000 yearly salary x 33 years = $3,564,000) - $70,000 yearly salary x 33 years = $2,310,000)].

$238,832.00.]

3) Lost future bonuses: **$356,400** (yearly bonus estimated at $10,800 x 33 years).
4) Lost past benefits (medical, dental, vision): Approximately **$13,500** (benefits estimated at $1,500/mon x 9 months to cover RESPONDING PARTY and 3 dependents).
5) Lost future benefits (medical, dental, vision): Approximately **$594,000** (benefits estimated at $1,500/mon x 33 years to cover RESPONDING PARTY and 3 dependents).

(Jackson Decl., ¶ 7, Ex. G at Response to Special Interrogatory No. 3) (emphasis in original).

38. Accordingly, based on either Plaintiff's broad allegations and demands for damages, or Plaintiff's verified interrogatory responses itemizing his damages, it is reasonable to estimate that the amount in controversy far exceeds $75,000.00.

## II. THIS NOTICE OF REMOVAL IS TIMELY

39. This Notice of Removal is timely under 28 U.S.C. section 1446(b) because this removal is being filed within 30 days after receipt by Defendants of the certified transcript of Plaintiff's deposition, from which it could be first ascertained that the case was subject to removal.

### A. ASI's Notice of Removal is Timely Based on Receipt of the Certified Transcript of Plaintiff's Deposition

40. 28 U.S.C. section 1446(b)(3) provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." (emphasis added.) In determining timeliness of removal, the Ninth Circuit has adopted the "unequivocally clear and certain" standard for determining when it "may first be ascertained that the case is . . . removable" within the meaning of Section 1446(b)(3). *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021).

41. A deposition transcript can "constitute 'other paper' within the meaning of section 1446(b)." *See Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 886-87 (9th Cir. 2010). "District courts in this Circuit have held that the receipt of the deposition transcript, not the deposition itself, begins the thirty-day removal timer." *Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2019 WL 1433727, at *3 (N.D. Cal. Apr. 1, 2019) (citing *Godoy v. Winco Holding Inc.*, No. 15-cv-01397-ODW-SP, 2015 WL 6394474, at *4 (C.D. Cal. Oct. 22, 2015) ("The deposition transcript is thus the first

paper under which it could be ascertained that the case was removeable."); *Williams v. Agilent Techs.*, No. 04-1810-MMC, 2004 WL 2648197, at *4 (N.D. Cal. Aug. 5, 2004) ("[B]ecause defendant removed the instant action within 30 days of receiving the transcript of the [plaintiff's] deposition, the court finds the removal proper.")); *Green v. Ritz-Carlton Hotel Co., L.L.C.*, No. 223CV07513MEMFRAO, 2023 WL 8809286, at *2 (C.D. Cal. Dec. 20, 2023) (thirty-day removal deadline was triggered when defendant's counsel received the transcript of plaintiff's deposition"); *see also Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 612 (5th Cir. 2018) (thirty-day window to remove a case begins upon "receipt of the deposition transcript").

42. Here, ASI received service of the Complaint on or about June 15, 2023. (Bazerkanian Decl., ¶ 4. However, Defendants were not on notice that the case was removable based on the face of the Complaint, as it was not until receipt of Plaintiff's certified deposition transcript that Defendants determined there was no possibility that Plaintiff could establish a cause of action against Aguilera. Specifically, as explained in Section I.C, *supra*, it was ambiguous what Plaintiff meant by his allegation that Aguilera "repeatedly . . . sought to obstruct [his] return to work," which necessitated his deposition. Plaintiff's deposition was also necessary to ascertain the scope of his communications with Aguilera, so that Defendants could determine whether there was a non-fanciful possibility that Plaintiff could amend the complaint to state a claim against Aguilera personally. *See Grancare*, 889 F.3d at 550 (fraudulent joinder inquiry requires district court to consider "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend"); *see also Dietrich*, 14 F.4th at 1094 (explaining that the "unequivocally clear and certain" standard guards against premature and protective removals and assures removal "occurs once the jurisdictional facts supporting removal are evident") (internal quotation marks and citation omitted).

43. Defendants deposed Plaintiff on February 6, 2024. (Jackson Decl., ¶ 8.) Defendants' counsel received a certified transcript of Plaintiff's deposition on February 19, 2024. (Jackson Decl., ¶ 9, Ex. H. Accordingly, this Notice of Removal is timely as it is being filed within 30 days of receipt of Plaintiff's certified deposition transcript. 28 U.S.C. § 1446(b)(3).

### III. THE OTHER REQUIREMENTS FOR REMOVAL ARE MET

44. Removal to this Court is proper as the Superior Court of the State of California, County

of San Francisco, where this action was originally filed, is located within this district.

45. Menzies believes that the documents contained in Exhibit L to the Jackson Declaration comprise the complete record of filings made in the San Francisco County Superior Court.

46. Because Plaintiff on the one hand, and ASI and Menzies on the other hand, are citizens of different states and the amount in controversy exceeds $75,000.00, this Court has original jurisdiction over all causes of action alleged in this matter pursuant to the provisions of 28 U.S.C. section 1332 and the entire action may be removed to this Court pursuant to the provisions of 28 U.S.C. section 1441.

47. This action was not commenced in state court more than one year before the date of removal. *See* 28 U.S.C. § 1446(c)(1).

48. Pursuant to 28 U.S.C. section 1446(a), Menzies (and Aguilera) are represented by the same counsel as ASI and consent to the removal.

49. Pursuant to 28 U.S.C. section 1446(d), ASI is filing written notice of this removal with the Clerk of the Superior Court of the State of California, County of San Francisco. Copies of the Notice of Removal are also being served on Plaintiff's counsel pursuant to 28 U.S.C. section 1446(d).

50. Wherefore, ASI prays that this action be removed from the Superior Court of the State of California, County of San Francisco to the United States District Court for the Northern District of California, San Francisco Division, and for such further relief as may be just and proper.

51. This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to, defenses and objections to venue, improper service of process, and personal jurisdiction. No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, motions, and pleas are expressly reserved.

DATED: March 20, 2024

**FOLEY & LARDNER LLP**
CHRISTOPHER WARD
KEVIN JACKSON

/s/ Kevin Jackson
KEVIN JACKSON
Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC.; MENZIES AVIATION (USA), INC.; TRACY AGUILAR