# Exhibit A

F. Shawn Azizollahi (SBN 268116)
shawn@marqueelaw.com
Gary Brotman (SBN 287726)
gary@marqueelaw.com
MARQUEE LAW GROUP, A Professional Corporation
9100 Wilshire Boulevard, Suite 445 East Tower
Beverly Hills, California 90212
(310) 275-1844 telephone
(310) 275-1801 fax

Attorneys for Plaintiff
Geary Sha

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco

06/09/2023
Clerk of the Court
BY: MARK UDAN
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| GEARY SHA, an individual;<br><br>             Plaintiff,<br>     vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; MENZIES AVIATION (USA), INC. a Delaware corporation; TRACY AGUILAR, an individual; and DOES 1 through 50, inclusive.<br><br>             Defendants. | Case No.: **CGC-23-606989**<br><br>**COMPLAINT FOR:**<br><br>1. **Disability Discrimination in Violation of Cal. Gov. Code Section 12900 et seq.;**<br>2. **Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 et seq.;**<br>3. **Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code Section 12900 et seq.;**<br>4. **Retaliation in Violation of Cal. Gov. Code Section 12900 et seq.;**<br>5. **Wrongful Termination In Violation of Public Policy (Count I); and**<br>6. **Wrongful Termination In Violation of Public Policy (Count II).** |

Plaintiff alleges:

## PARTIES

1.      Plaintiff, Geary Sha ("Plaintiff" herein), is, and at all relevant times was, a resident of Vallejo, California.

2.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Aircraft Service International, Inc. ("ASI") is, and at all relevant times was, a corporation organized and existing under the laws of the state of Delaware, qualified to do business in the state of California, with its principal place of business located at 3500 William D Tate Avenue, Suite 200, Grapevine, Texas 76051.

3.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Menzies Aviation (USA), Inc. ("Menzies") is, and at all relevant times was, a corporation organized and existing under the laws of the state of Delaware, qualified to do business in the state of California, with its principal place of business located at 4900 Diplomacy Road, Fort Worth, Texas 76155.

4.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Tracy Aguilar is, and at all relevant times was, a resident of San Francisco, California. At all relevant times, Aguilar was the Human Resources Manager for Menzies Aviation who controlled the work conditions for Plaintiff.

5.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by said defendants. (ASI, Menzies, and DOES 1 through 50 shall collectively herein be referred to as "Defendants").

6.      At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code § 12926(d). Plaintiff was employed by Defendants and worked at Defendant's office located at 730 North McDonnell Road, San Francisco, CA 94128 until, as

alleged herein, Plaintiff's employment was terminated on or about January 3, 2023 for unlawful

reasons in violation of the California Fair Employment and Housing Act ("FEHA," California

Government Code § 12900 et seq.) and in violation of California public policy.

7.     Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and

based thereon alleges, that each of the Defendants sued herein was, at all relevant times hereto,

the employer, owner, principal, franchisee, proxy, agent, employee, supervisor, representative,

manager, managing agent, joint employer, and/or alter ego of the remaining Defendants, and was

acting, at least in part, within the course and scope of such employment and agency, with express

and implied permission, consent, and knowledge. The above Defendants, managing agents, and

supervisors aided, abetted, condoned, permitted, willfully ignored, approved, authorized, and/or

ratified the unlawful acts described herein, and each and every one of the acts and omissions

alleged herein were performed by, and/or are attributable to all Defendants.

## **JURISDICTION**

8.     Plaintiff is informed and believes, and based thereon alleges, that at all times

herein mentioned, Defendants, and each of them, were doing business in the State of California

such that the exercise of jurisdiction by this Court would not be inconsistent with the

Constitution of the State of California and/or the United States of America.

9.     This Court has jurisdiction over this action pursuant to California Code of Civil

Procedure Section 410.10.

10.     The total amount in controversy for claims of Plaintiff is more than Twenty-Five

Thousand Dollars ($25,000). In addition, Plaintiff asserts no claims under federal law, with all

causes of action named herein being based exclusively under California law.

## **VENUE**

11.     Plaintiff is informed and believes, and based thereon alleges, that venue is proper

in San Francisco County because Defendants, and each of them, have conducted business within

the County of San Francisco and a substantial portion of the wrongful acts complained of occurred therein.

## **GENERAL ALLEGATIONS**

12.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

*Plaintiff's Employment:*

13.     Defendants employed Plaintiff from on or about May 29, 2018 until on or about January 3, 2023 (the "Employment Period").

14.     ASI is a flight support company which provides a wide array of services to commercial aircraft. ASI offers refueling services to aircraft on the ground as well as ground handling services including baggage and cargo handling and transfer services. ASI is also responsible for providing cabin and lounge cleaning as well as jetway de-icing services. ASI operates around the country and beyond.

15.     Similarly, Menzies, in conjunction with ASI, provides ground, fueling, and cargo services to commercial aircraft. In or about 2017, Menzies acquired ASI, who now operates in California under the fictitious business name Menzies aviation. At all relevant times herein, both Menzies and ASI jointly managed and controlled Plaintiff's wages, hours, work schedule, and work conditions.

16.     Plaintiff was a hard-working and successful Operations/General Manager, who carried out his duties effectively and was excited to work for Defendants. That is, until Defendants turned against Plaintiff when he suffered from a temporary disability and required several months of medical leave.

*Plaintiff's Protected Status:*

17.     Plaintiff is a 36-year-old male who suffered from a temporary physical disability. Plaintiff had to have two heart valve surgeries and suffered complications from the first, including a stroke that temporarily disabled Plaintiff's right side of the body. Plaintiff went out on medical leave for several months to recover and was ultimately wrongfully terminated for

discriminatory and retaliatory reasons, i.e., for belonging to a protected class and for engaging in protected activities. Consequently, Plaintiff is a protected employee, as defined under California Law. (See. Cal. Gov't Code § 12940, *et seq*.).

***Plaintiff's Job Performance:***

18.     Plaintiff was an exemplary employee of Defendants throughout the entirety of the Employment Period. Plaintiff never received any negative performance evaluations and was promoted to his managerial position with ease.

***Defendants' Harassing, Discriminatory, and Retaliatory Conduct:***

19.     In or about February 2022, Plaintiff requested and received approval from Defendants for a medical leave of absence pursuant to the Family Care Medical Leave Act ("FMLA") because Plaintiff needed to have heart valve surgery. Plaintiff's FMLA leave was approved from February 11, 2022 through May 7, 2022. Because of Plaintiff's condition, he had scheduled heart surgery for on or about February 11, 2022 and anticipated about one month for recovery time, assuming the procedure was successful.

20.     Unfortunately, Plaintiff suffered complications during this first surgery and nearly lost his life during the procedure. The day after this surgery, on or about February 12, 2022, Plaintiff was transferred to a different hospital to properly perform the heart valve surgery and correct complications from the first surgery. As a result of the first surgery completely shutting the left valve of Plaintiff's heart and cutting off the blood supply to that portion of his heart, Plaintiff received a Left Ventricular Assisting Device ("LVAD") during this second procedure which would open and shut the valve on the left side of Plaintiff's heart properly.

21.     Further, due to the complications from the first surgery resulting in a lack of blood flow in Plaintiff's heart, Plaintiff suffered a stroke which disabled the right side of his body. Plaintiff was temporarily unable to move his right arm and right leg; he could not walk nor write. Plaintiff notified Defendants of his condition and his FMLA leave was extended until on or about May 7, 2022.

22.     On or about April 7, 2022 Plaintiff was seen by his doctor who extended Plaintiff's medical leave to absence through September 19, 2022. He was prescribed the use of a

cane or wheelchair during this time as he continued his physical therapy and recovery. A human resources representative from Defendants, Tracy Aguilera, responded to Plaintiff's new request to extent his medical leave stating, "I'm glad to hear you are doing well." On April 14, 2022 Plaintiff received approval of his request for extended medical leave from Defendant's Leave of Absence/Return to Work Specialist Patricia Gibson.

23.    Just before Plaintiff was set to return on September 20, 2022, Plaintiff's doctors discovered that Plaintiff's heart had made an unexpected recovery. Plaintiff's heart began to function properly and no longer needed the LVAD. Thus, Plaintiff's doctors informed him that the LVAD needed to be removed and provided him with a new doctor's note requesting one last extension to his medical leave through December 19, 2022, in order for Plaintiff to have one final procedure to remove the LVAD. Plaintiff's doctors scheduled the surgery in or about October 2022 to remove the device and extended Plaintiff's leave until December 19, 2022. Plaintiff's requested extension was once again approved by Defendants.

24.    On or about December 20, 2022, Plaintiff drove into work, excited that he was able to continue working and that his heart had recovered, only to receive a phone call from Defendants' human resources manager Tracy Aguilar ("Aguilar"), who told Plaintiff, for the first time, that his position had been eliminated during his leave and that he would no longer be General Manager. Plaintiff was in complete shock and disbelief. He asked what he was supposed to do, and Aguilar responded by telling Plaintiff he could come back to an entry level job as an aircraft fueler or cargo handler. Plaintiff would have to go from a salaried position making over $100,000 per year, to an hourly role making less than $20.00 per hour. Plaintiff felt that these job offers were a slap in the face as he would have to come back to a position making less than half of his old hourly rate and be managed by the team members he used to manage before taking medical leave.

25.    Plaintiff told Aguilar that financially he could not accept an entry level position and that he wanted to come back in a managerial role comparable to the Operations/General Manager role Plaintiff held prior to going on medical leave. Aguilar told Plaintiff that he had until on or about December 23, 2022 to accept one of those positions and if he did not then

Aguilar would terminate Plaintiff's employment as a "voluntary resignation." Plaintiff reiterated he was not resigning, and again asked to return to his old role or a comparable managerial role in another department.

26.    Plaintiff had a meeting with Aguilar on December 23, 2022. Aguilar sent a recap email that same day reiterating that Plaintiff had stated he financially cannot accept the entry level positions offered to him. Aguilar set up a "final meeting" with Plaintiff for December 28, 2022 for him to "reconsider accepting one of the positions being offered." Aguilar further informed Plaintiff that "If you do not attend the meeting, I will then accept your voluntary resignation."

27.    Plaintiff met with Aguilar again on December 28, 2022, where he maintained that he deserved to comeback to a comparable role and reiterated that he would not resign. Aguilar then sent Plaintiff an email stating that Plaintiff verbally refused the entry-level positions offered to him again. Aguilar then listed four (4) managerial positions within Menzies and/or ASI, but each position was out of state (Illinois, Toronto, or Texas), and Defendants informed Plaintiff that "there are no relocation funds available." Moreover, the positions were not simply offered to Plaintiff, but he was told by Aguilar that he would need to apply and interview for any position he was interested in. Aguilar gave Plaintiff two (2) days to make a decision and concluded her email by stating "Failure to respond, I will accept this as your voluntary resignation."

28.    On or about December 29, 2022, Plaintiff emailed Aguilar stating that he needed more than two (2) days to consider relocating his entire family to another state, and again stated "I do not resign or voluntarily resign, and it feels threaten when you say this (*sic*)."

29.    Aguilar would respond via email this very same day once again stating that Plaintiff had refused the entry-level jobs in San Francisco, and that she had offered him some managerial positions for which he would "have [to] interview and be considered, if [he] qualif[ies]." Aguilar gave Plaintiff until January 3, 2023 to make a decision, and told Plaintiff that if he did not accept one of the entry level jobs in San Francisco by January 3, 2023 then she would "have no choice but to terminate [Plaintiff's] employment as a voluntary resignation/refused worked (*sic*)."

30.     On or about January 3, 2023, Plaintiff sent Aguilar an email saying that he could not apply for the out of state jobs as he could not move his family across (or out of) the country, and that he could not financially take the entry level laborer jobs offered in San Francisco since it would cut his pay in half. Yet again, Plaintiff stated that he was not resigning and that he felt that Aguilar was forcing Plaintiff to take these jobs menial jobs and/or resign and was being treated this way because of his medical leave. Aguilar responded the same day, and instead of addressing Plaintiff's concerns of disparate treatment or attempting to help Plaintiff, Aguilar sent Plaintiff a change in status form wrongfully terminating his employment. Aguilar selected that Plaintiff voluntarily resigned and refused work on the change of status form.

***Exhaustion of Administrative Remedies:***

31.     At all applicable times mentioned herein, Defendants regularly employed five or more persons in California, bringing Defendants subject to the provisions of the Fair Employment and Housing Act ("FEHA").

32.     Plaintiff has adequately exhausted all of his administrative remedies under the FEHA and obtained a valid "right to sue" letter against Defendants from the Department of Fair Employment and Housing.


**<u>FIRST CAUSE OF ACTION</u>**

(Disability Discrimination in Violation of Cal. Gov. Code Section 12900 et seq.

by Plaintiff Against ASI, Menzies, and Does 1-50)

33.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

34.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed her employment duties in a satisfactory manner.

35.     Because FEHA requires only a "limitation" on a major life activity, evidence of a temporary or short-term impairment qualifies an employee as disabled under FEHA, thereby

affording said employee the protections provided to disabled persons under FEHA. (*Diaz v. Fed. Express Corp.,* (2005) 373 F.Supp.2d 1034, 1051-1052).

36.    Plaintiff suffered from a physical disability and is a member of a protected class within the meaning of FEHA and is entitled to its guarantees of full and equal access to employment.

37.    It is unlawful for an employer to discriminate against an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person" or to "discharge the person from employment… or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Cal. Gov't Code § 12940(a)).

38.    Plaintiff was, at all times herein, an "employee" covered by California Government Code § 12900 et seq.

39.    Defendants were at all relevant times hereto "employers" within the meaning of California Government Code § 12900 et seq.

40.    Plaintiff's physical disability and/or other characteristics protected by FEHA were motivating factors in Defendant's adverse treatment of Plaintiff, as set forth in detail herein above.

41.    Plaintiff has performed competently and has gone above and beyond in his position, has suffered an adverse employment action, and the circumstances give rise to the discriminatory conduct from Defendants.

42.    As alleged herein above, Plaintiff suffered from a physical disability that resulted in several heart surgeries and a stroke that disabled the right side of his body. Plaintiff would suffer from surgical complications which resulted in his medical leave being extended through December 2022. Upon attempting to return to work in December 2022, Defendants informed Plaintiff, for the first time, that his position had been eliminated while he was out on medical leave. Defendants then offered Plaintiff entry level laborer positions with a pay cut of over 50%, or managerial positions out of state for which Plaintiff would have to apply and interview for,

and no relocation fees would be provided. Defendants told Plaintiff that if he refused to accept one of these positions then they would terminate his employment, and that is exactly what they did. On January 3, 2023, Defendants sent Plaintiff a change of status form wrongfully contending that Plaintiff had voluntarily resigned and refused work, thereby terminating his employment.

43.     Defendants' conduct as alleged herein violated FEHA and Defendants committed unlawful employment practices, including, without limitation, discriminating against Plaintiff by materially affecting the terms and conditions of his employment, in whole or in part on the basis of Plaintiff's mental disability in violation of California Government Code § 12900 et seq.

44.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

45.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

46.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## SECOND CAUSE OF ACTION

(Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff Against Defendants and Does 1-50)

47.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

48.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed her employment duties in a satisfactory manner.

49.     Plaintiff suffered from a disability during the Employment Period and was a member of a protected class within the meaning of the FEHA and is entitled to its guarantees of full and equal access to employment.

50.     It is unlawful for an employer to harass an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person." Harassment of an employee "shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. (Cal. Gov't Code § 12940(j)). Even discriminatory personnel/management decisions of the employer can provide the basis for a harassment or hostile work environment claim. (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 707; See also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446.)

51.     Plaintiff was at all times herein an "employee" covered by Cal. Gov. Code § 12900 et seq. Defendants were at all relevant times hereto "employers" within the meaning of Cal. Gov. Code § 12900 et seq.

52.     Plaintiff's disability and/or other characteristics protected by FEHA were motivating factors in Defendant's adverse treatment of Plaintiff.

53.     As described herein above, during Plaintiff's employment, Defendants, and each of them and/or their agents or employees engaged in a pattern and practice of unlawful harassment in violation of FEHA. Defendants harassed Plaintiff via the actions of Aguilar, who acting in her capacity as an agent and employee of ASI and Menzies, repeatedly (i) sought to obstruct Plaintiff's return to work, (ii) continually threatened Plaintiff with his "voluntary resignation" despite multiple written statements from Plaintiff that he would not resign, (iii) gave Plaintiff unrealistic deadlines for which to decide whether to take over a 50% pay cut or relocate

his family across or to another country, (iv) ignored and failed to investigate Plaintiff's claim of disparate treatment based upon his disability/medical leave, and (v) instead responded by terminating Plaintiff's employment.

54.    The harassment and hostile work environment as alleged herein was such that a reasonable woman in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, and/or abusive.

55.    Defendants knew or should have known of Aguilar's conduct but continued to allow her to continue to harass, threaten, belittle, and humiliate Plaintiff without any disciplinary action, thereby creating a hostile, intimidating, offensive, oppressive, and abusive work environment.

56.    As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer aggravation of her injuries, substantial losses in earnings, benefits, humiliation, emotional distress, and physical and mental pain and anguish all to her damage in a sum according to proof at the time of trial.

57.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Cal. Gov. Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

58.    Defendant's conduct was willful, knowing malicious intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendant's conduct evidences a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amount according to proof at the time of trial.

## THIRD CAUSE OF ACTION

(Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff Against ASI, Menzies, and Does 1-50)

59.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

60.     At all relevant times, there existed an employer-employee relationship between Plaintiff and Defendants.

61.     At all relevant times, Defendants were employers who regularly employed five or more persons within the meaning of California Government Code § 12900 et seq.

62.     At all applicable times herein, Gov. Code § 12900 et seq. was in full force and effect and binding on Defendants.

63.     California law requires that employers take reasonable steps to prevent and correct wrongful behavior, including, but not limited to, harassing and discriminatory behavior. (*See* Gov. Code § 12940(k)) (In it unlawful "For an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.")). Pursuant to this statute, Defendants were required to take all reasonable steps to prevent discrimination and harassment against Plaintiff based on Plaintiff's disability and/or other protected characteristics.

64.     As alleged herein above, throughout the Employment Period, Defendants failed to prevent Defendants and their agents, supervisors, employees, and others from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (i.e., disability). Plaintiff complained of the disparate treatment he suffered due to his disability/request for medical leave. Rather than investigate and/or remediate the matter, Defendants responded via the wrongful termination of his employment.

65.     Plaintiff is informed and believes, and based thereon alleges, that his disability and/or other characteristics protected by FEHA were substantial motivating factors in Defendants' adverse treatment of Plaintiff. Despite knowing its legal obligations, Defendants did nothing to prevent the rampant discrimination and harassment that Plaintiff suffered.

66.     Defendants knew, or reasonably should have known of the other Defendants and their agents, supervisors and employees' unlawful discrimination of Plaintiff, and that Defendants should have restrained such other Defendants from engaging in such conduct.

67.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job

benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

68.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

69.    Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## FOURTH CAUSE OF ACTION

(Retaliation in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff

Against ASI, Menzies, and Does 1-50)

70.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

71.    At all relevant times, there existed an employer-employee relationship between Plaintiff and Defendants.

72.    At all relevant times, Defendants were employers who regularly employed five or more persons within the meaning of California Government Code § 12900 et seq.

73.    At all applicable times herein, Gov. Code § 12900 et seq. was in full force and effect and binding on Defendants.

74.    California Government Code § 12940(h) provides that it is unlawful to retaliate against a person "because the person has opposed any practices forbidden under [Government Code Sections 12900-12966]". It is also unlawful to retaliate or otherwise discriminate against a person for requesting an accommodation for disability, regardless of whether the accommodation was granted. (*See* Cal. Gov't Code § 12940(m)(2)).

75.    As alleged herein above, Plaintiff requested a medical leave of absence pursuant to the FMLA in or about February 2022 for him to obtain a necessary heart surgery. Plaintiff

would suffer from surgical complications which resulted in his medical leave being extended through December 2022. Upon attempting to return to work in December 2022, Defendants retaliated against Plaintiff for his extended medical leave by informing him, for the first time, that his position had been eliminated while he was out on medical leave. Defendants then offered Plaintiff entry level laborer positions with a pay cut of over 50%, or managerial positions out of state for which Plaintiff would have to apply and interview for, and no relocation fees would be provided. Defendants told Plaintiff that if he refused to accept one of these positions then they would terminate his employment, and that is exactly what they did. On January 3, 2023, Defendants committed their final retaliatory act via the wrongful termination of his employment.

76.    As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

77.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

78.    Defendants' conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## FIFTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy (Count I) By Plaintiff Against ASI, Menzies, and Does 1-50)

79.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

80.    At all relevant times herein, there existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period.

81.    At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

82.    At all relevant times to this action, Government Code § 12900 et seq. was in full force and effect and was binding upon Defendants. Government Code § 12900 et seq. prohibits an employer from retaliating against employees who request a disability related accommodation. (Cal. Gov't Code § 12900(m)(2)). Government Code § 12900 et seq. evinces a policy that benefits society at large, was well-established at the time of Plaintiff's discharge, and is substantial and fundamental.

83.    Plaintiff's requests for and use of FMLA leave and extended medical leave were substantial motivating reasons for Defendants' decision to terminate Plaintiff's employment.

84.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and other job benefits, and will for a period of time in the future be unable to obtain gainful employment, as Plaintiff's ability to obtain such employment and earning capacity has been diminished. The exact amount of such expenses and losses is presently unknown, and Plaintiff will seek leave to amend this Complaint to the exact amount when it is ascertained.

85.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered general damages, as Plaintiff was psychologically injured. Such injuries have caused, and continue to cause Plaintiff great mental pain and suffering, humiliation, grief, and anxiety, in an amount more than the jurisdictional limits of this Court.

86.    Plaintiff is informed and believes, and based thereon alleges, that Defendants' (including employees, officers, directors, and/or managing agents of Defendants) conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof.

87.    Plaintiff is informed and believes, and based thereon alleges, that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the

prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by it as well as by and through its officers, directors, and/or managing agents.

**SIXTH CAUSE OF ACTION**

(Wrongful Termination in Violation of Public Policy (Count II)

by Plaintiff Against ASI, Menzies, and Does 1-50)

88.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

89.     At all relevant times herein, there existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period.

90.     At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

91.     At all applicable times herein, California Government Code § 12900 et seq. and California Constitution Art I., § 8 were in full force and effect and binding on Defendants.

92.     Defendants' termination of Plaintiff was in violation of fundamental public policies, articulated in Government Code § 12900 et seq. and Article I, § 8 of the California Constitution. Specifically, that the policy behind the prevention of discrimination protects Plaintiff and the public at large, is substantial and fundamental, was well established at the time of Plaintiff's discharge, and can form the basis of a common law wrongful termination claim. (*Stevenson v. Superior Court (Huntington Mem. Hosp.)*, (1997) 16 Cal.4th 880, 889; *Phillips v. St. Mary Regional Medical Center*, (2002) 96 Cal.App.4th 218, 227).

93.     Plaintiff's disability and/or other protected characteristics were a substantial motivating reason for Defendants' decision to terminate Plaintiff's employment.

94.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and other job benefits, and will for a period of time in the future be unable to obtain gainful employment, as Plaintiff's ability to obtain such employment and earning capacity has been diminished. The exact amount of such expenses and

losses is presently unknown, and Plaintiff will seek leave to amend this Complaint to the exact amount when it is ascertained.

95.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered general damages, as Plaintiff was psychologically injured. Such injuries have caused, and continue to cause Plaintiff great mental pain and suffering, humiliation, grief, and anxiety, in an amount more than the jurisdictional limits of this Court.

96.     Plaintiff is informed and believes, and based thereon alleges, that Defendants' (including employees, officers, directors, and/or managing agents of Defendants) conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof.

97.     Plaintiff is informed and believes, and based thereon alleges, that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by it as well as by and through its officers, directors, and/or managing agents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

## UNDER THE FIRST CAUSE OF ACTION

1.  For all compensatory, consequential, general and special damages, subject to proof;

2.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;

3.  For attorney's fees and costs pursuant to Government Code § 12965(b);

4.  For interest according to law;

5.  For costs of suit incurred herein; and

6.  For such other and further relief that the Court determines to be just and proper.

**UNDER THE SECOND CAUSE OF ACTION**

1.  For all compensatory, consequential, general and special damages, subject to proof;
2.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3.  For attorney's fees and costs pursuant to Government Code § 12965(b);
4.  For interest according to law;
5.  For costs of suit incurred herein; and
6.  For such other and further relief that the Court determines to be just and proper.

**UNDER THE THIRD CAUSE OF ACTION**

1.  For all compensatory, consequential, general and special damages, subject to proof;
2.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3.  For attorney's fees and costs pursuant to Government Code § 12965(b);
4.  For interest according to law;
5.  For costs of suit incurred herein; and
6.  For such other and further relief that the Court determines to be just and proper.

**UNDER THE FOURTH CAUSE OF ACTION**

1.  For all compensatory, consequential, general and special damages, subject to proof;
2.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3.  For attorney's fees and costs pursuant to Government Code § 12965(b);
4.  For interest according to law;
5.  For costs of suit incurred herein; and
6.  For such other and further relief that the Court determines to be just and proper.

## **UNDER THE FIFTH CAUSE OF ACTION**

1.  For all compensatory, consequential, general and special damages, subject to proof;

2.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;

3.  For interest according to law;

4.  For costs of suit incurred herein; and

5.  For such other and further relief that the Court determines to be just and proper.

## **UNDER THE SIXTH CAUSE OF ACTION**

6.  For all compensatory, consequential, general and special damages, subject to proof;

7.  For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;

8.  For interest according to law;

9.  For costs of suit incurred herein; and

10. For such other and further relief that the Court determines to be just and proper.

Dated: June 8, 2023.                    MARQUEE LAW GROUP, APC

By: _____
F. Shawn Azizollahi, Esq.
Gary S. Brotman, Esq.
Attorneys for Plaintiff Geary Sha

//
//
//
//
//
//

1

## **DEMAND FOR JURY TRIAL**

2        PLAINTIFF hereby demands a jury trial with respect to all issues triable in the

3   Complaint.

4

5   Dated: June 8, 2023                    MARQUEE LAW GROUP, APC

6

7                                          By: _____

8                                              F. Shawn Azizollahi, Esq.
                                               Gary S. Brotman, Esq.
9                                              Attorneys for Plaintiff Geary Sha

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-
COMPLAINT