CHRISTOPHER WARD, CA Bar No. 238777
  cward@foley.com
FOLEY & LARDNER LLP
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

KEVIN JACKSON, CA Bar No. 278169
  kjackson@foley.com
FOLEY & LARDNER LLP
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:  858.792.6773

Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC.; MENZIES AVIATION (USA), INC.; TRACY AGUILAR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEARY SHA, an individual,<br><br>                              Plaintiff,<br><br>vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; MENZIES AVIATION (USA), INC., a Delaware corporation; TRACY AGUILAR, an individual; and DOES 1 through 50, inclusive,<br><br>                              Defendants. | Case No. 3:24-cv-01738-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE**<br><br>Date:     June 13, 2024<br>Time:    1:30 p.m.<br>Ctrm:    5<br>Judge:   Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ..........................1

III. LEGAL STANDARD............................................................................................................2

IV. ARGUMENT .........................................................................................................................4

    A. DIVERSITY BETWEEN PLAINTIFF AND CORPORATE DEFENDANTS ASI AND MENZIES EXISTS AND IS NOT IN DISPUTE......................................................4

    B. PLAINTIFF'S CERTIFIED DEPOSITION TRANSCRIPT IS AN "OTHER PAPER" JUSTIFYING REMOVAL ...........................................................................4

    C. DEFENDANTS' RECEIPT OF A ROUGH DRAFT DEPOSITION TRANSCRIPT DOES NOT RENDER THEIR REMOVAL UNTIMELY ...................5

    D. AGUILERA'S CITIZENSHIP CANNOT DEFEAT DIVERSITY BECAUSE SHE IS A SHAM DEFENDANT ...................................................................................7

        i. Plaintiff's Allegations and Deposition Testimony Evidence that He Cannot Prevail on a Harassment Claim Against Aguilera ..........................7

        ii. Plaintiff's Argument that He Needs to Depose Aguilera Does Not Justify Remand ....................................................................................... 11

V. CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Boulder Brands, Inc.*,
 No. 3:12-CV-01862-BTM, 2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) .......................... 6

*Cofer v. Parker-Hannifin Corp.*,
 194 F. Supp. 3d 1014 (C.D. Cal. 2016) ........................................................................ 11

*Dietrich v. Boeing Co.*,
 14 F.4th 1089 (9th Cir. 2021) .......................................................................................... 6

*Ferrigno v. Philips Elecs. N. Am. Corp.*,
 2009 WL 10692955 (N.D. Cal. Nov. 5, 2009) ................................................................. 7

*Fiol v. Doellstedt*,
 50 Cal. App. 4th 1318 (1996) ........................................................................................ 11

*Galvan v. Dameron Hosp. Ass'n*,
 37 Cal. App. 5th 549 (2019) ............................................................................................ 7

*Good v. Prudential Ins. Co. of Am.*,
 5 F. Supp. 2d 804 (N.D. Cal. 1998) ................................................................................. 3

*Grancare, LLC v. Thrower by and through Mills*,
 889 F.3d 543 (9th Cir. 2018) ........................................................................................... 5

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
 494 F.3d 1203 (9th Cir. 2007) ......................................................................................... 3

*Hernandez v. Ignite Rest. Grp., Inc.*,
 917 F. Supp. 2d 1086 (E.D. Cal. 2013) ........................................................................... 3

*Hertz Corp. v. Friend*,
 559 U.S. 77 (2010) ........................................................................................................... 4

*Hughes v. Pair*,
 46 Cal. 4th 1035 (2009) ................................................................................................... 7

*Hunter v. Philip Morris USA*,
 582 F.3d 1039 (9th Cir. 2009) ......................................................................................... 3

*Janken v. GM Hughes Elecs.*,
 46 Cal. App. 4th 55 (1996) ......................................................................................... 8, 9

*Kantor v. Wellesley Galleries, Ltd.*,
 704 F.2d 1088 (9th Cir. 1983) ......................................................................................... 4

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
    220 F. Supp. 2d 1116 (N.D. Cal. 2002) .................................................................................... 3

*McCabe v. Gen. Foods Corp.*,
    811 F.2d 1336 (9th Cir. 1987) .................................................................................................. 3

*McCann v. Alaska Airlines, Inc.*,
    758 F. Supp. 559 (N.D. Cal. 1991) ........................................................................................... 6

*Miller v. Dep't of Corr.*,
    36 Cal. 4th 446 (2005) ....................................................................................................... 7, 10

*Mireles v. Wells Fargo Bank, N.A.*,
    845 F. Supp. 2d 1034 (C.D. Cal. 2012) .................................................................................... 2

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) .................................................................................................. 3

*Narayan v. Compass Grp. USA, Inc.*,
    284 F. Supp. 3d 1076 (E.D. Cal. 2018)..................................................................................... 3

*Nasrawi*,
    776 F. Supp. 2d ......................................................................................................................... 4

*Orr v. Bank of Am.*, NT & SA,
    285 F. 3d 764 (9th Cir. 2002) ................................................................................................... 6

Plaintiff relies on *David v. C.H. Robinson Int'l, Inc.*,
    No. CV 18-3268 FMO (EX), 2018 WL 3213716 (C.D. Cal. June 29, 2018)........................... 6

*Reno v. Baird*,
    18 Cal. 4th 640 (1998) .............................................................................................................. 8

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) .............................................................................................. 3, 5

*Roby v. McKesson Corp.*,
    47 Cal. 4th 686 (2009) ......................................................................................................... 8, 10

*Smallwood v. Illinois Cent. RR. Co.*,
    385 F.3d 568 (5th Cir. 2004) .................................................................................................... 3

*Starbuck v. City & Cnty. of San Francisco*,
    556 F.2d 450 (9th Cir. 1977) .................................................................................................... 6

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal. 4th 1028 (2005) ............................................................................................................ 8

**Statutes**

28 U.S.C. § 1332 .................................................................................................................... 2

28 U.S.C. § 1332(a)(1) ........................................................................................................... 2

28 U.S.C. § 1332(c)(1) ........................................................................................................... 4

28 U.S.C. § 1441 .................................................................................................................... 2

28 U.S.C. § 1446 .................................................................................................................... 2

Cal. Code of Civil Procedure § 415.30 .................................................................................. 2

Cal. Gov. Code § 12900 ........................................................................................................ 1

I.  **INTRODUCTION**

In Plaintiff's Motion to Remand (the "Motion"), Plaintiff argues paradoxically that Menzies' removal was both untimely and premature. Menzies was not on notice of a basis for removal until it received Plaintiff's certified deposition transcript, and timely filed a Notice of Removal within 30 days of receipt. As for the substantive reasons for removal and Plaintiff's obvious fraudulent joinder strategy to avoid diversity jurisdiction by naming Tracy Aguilera as a sham defendant, Plaintiff's deposition testimony is unequivocal. He admits that he was in a position of superior authority to Aguilera, and that she did not have supervisory authority over him. He described her handling of his return to work and job assignments as an ordinary part of her regular duties as a Human Resources Manager. He even admitted that Aguilera had little authority over the decision-making process, and that in his prior interactions with her in his capacity as a General Manager, she had to follow his directives. Plaintiff admits that Aguilera never made a single negative comment about his medical condition or leave of absence. It is clear that the only reason Plaintiff named Aguilera in his Complaint is to defeat diversity and avoid removal to federal court. But the law is clear: a sham defendant cannot be weaponized to divest this Court of jurisdiction where diversity otherwise exists.

II.  **STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

On June 9, 2023, Plaintiff initiated this action in San Francisco County Superior Court. (Complaint ("Compl.") at ECF No. 1-2, Ex. A.) In his Complaint, Plaintiff alleges six causes of action for: (1) Disability Discrimination in Violation of Cal. Gov. Code Section 12900 *et seq*.; (2) Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 *et seq*.; (3) Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code Section 12900 *et seq*.; (4) Retaliation in Violation of Cal. Gov. Code Section 12900 *et seq*.; (5) Wrongful Termination in Violation of Public Policy (Count I); and (6) Wrongful Termination in Violation of Public Policy (Count II). (*Id.*) Of Plaintiff's six claims, only the second cause of action for hostile work environment harassment is asserted against Aguilera. (*Id.*) On June 14, 2023, Menzies and Aguilera, through counsel, each received a copy of the Complaint and a Notice and Acknowledgment of Receipt. (Notice of Removal ("NOR") at ECF No. 1, ¶ 2.) On or around June 15, 2023, ASI received service of the Complaint. (NOR at ECF No. 1, ¶ 3.) On July 5, 2023, Menzies and Aguilera, by and through counsel, each

returned a completed Notice of Acknowledgment of Receipt, pursuant to California Code of Civil Procedure section 415.30. (NOR at ECF No. 1, ¶ 4.)

Based on the face of the Complaint, Defendants were not on notice that the case was removable, particularly in light of the extensive district court opinions that indicate suspected fraudulent joinder is extremely difficult to establish based on a Plaintiff's pleading alone. *See*, *e.g.*, *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1063 (C.D. Cal. 2012). Menzies thus did not remove to this Court at that time because complete diversity was not manifestly present and Menzies did not have any ability to establish fraudulent joinder based on the pleadings. (NOR at ECF No. 1, ¶¶ 7, 11.) On August 4, 2024, Defendants issued a Notice of Deposition of Plaintiff for September 19, 2023, at 10:00 a.m., and subsequently met and conferred with Plaintiff's counsel to ultimately select a mutually-agreeable deposition date of February 6, 2024. (NOR at ECF No. 1, ¶ 8.) On February 6, 2024, Defendants took the first session of the deposition of Plaintiff. (NOR at ECF No. 1, ¶ 9.) On February 19, 2024, Defendants' counsel received a certified transcript of Plaintiff's February 6, 2024 deposition session. (NOR at ECF No. 1, ¶ 10.)

Subsequently, on March 20, 2024, ASI timely removed the action to this Court on the grounds of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (NOR at ECF No. 1, ¶¶ 7, 10-13.) ASI's Notice of Removal explained that Plaintiff failed to allege a viable claim against a resident of California, noting that Aguilera's citizenship should not be considered because Plaintiff's deposition admissions make plan he named Aguilera as a sham defendant and there exists no actionable cause of action for harassment against her and there is no possibility Plaintiff could amend to cure the deficiency. (NOR at ECF No. 1, ¶¶ 11, 27-35.) The Notice of Removal further demonstrated that Plaintiff's claims have placed more than $75,000 in controversy. (NOR at ECF No. 1, ¶¶ 36-38.)

On April 19, 2024, Plaintiff filed the pending Motion to Remand this case back to the San Francisco County Superior Court. (Motion ("Mot.") at ECF No. 13.)

### III.    LEGAL STANDARD

A case may be removed to federal court based on diversity of citizenship where (1) there is complete diversity, such that each plaintiff is a citizen of a different state than each defendant and (2) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. §

1332(a)(1). An exception to complete diversity exists where there is a fraudulently joined or "sham" non-diverse defendant. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001)); *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1084 (E.D. Cal. 2018); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."). There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter*, 582 F.3d at 1044 (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). Fraudulent joinder is established the second way if a defendant shows that an "individual[] joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; *Hunter*, 582 F.3d at 1043 ("Joinder is fraudulent and a sham to defeat diversity jurisdiction if 'the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'") (quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).

"The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). It is a defendant's burden to prove fraudulent joinder by clear and convincing evidence. *Narayan*, 284 F. Supp. 3d at 1084 (citing *Hamilton*, 494 F.3d at 1206). A defendant's allegation that a plaintiff has not pled sufficient facts to state a claim is not enough to establish fraudulent joinder if the plaintiff can potentially amend the complaint to allege a viable claim. *Narayan*, 284 F. Supp. 3d at 1084. "Nonetheless, if it is clear under state law that under no circumstance identified by a plaintiff could a viable claim be made against the defendant alleged to have been fraudulently joined, dismissal can still be appropriate." *Narayan*, 284 F. Supp. 3d at 1084 (citing *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[D]efendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.").

If "there exists 'a non-fanciful possibility' that Plaintiff can state a claim under California law against the non-diverse defendant," there is no "sham" defendant, and the Court must remand. *Hernandez v. Ignite Rest. Grp., Inc.*, 917 F. Supp. 2d 1086, 1091-92 (E.D. Cal. 2013) (quoting *Macey v.*

*Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002)).  In other words, "[i]n the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned."  *Nasrawi*, 776 F. Supp. 2d at 1169-70.

IV.   **ARGUMENT**

   A.   **Diversity Between Plaintiff and Corporate Defendants ASI and Menzies Exists and is Not in Dispute**

   Plaintiff's and Defendant ASI's and Menzies' diverse citizenship is not in dispute.  First, at the time of the filing of the action and at the time of filing this Notice of Removal, Plaintiff was and still is a citizen of California, inasmuch as Plaintiff alleges that he "is, and at all relevant times was, a resident of Vallejo, California."  (*See* Compl. at ECF No. 1-2, Ex. A, ¶ 1.)  For purposes of assessing diversity jurisdiction, Plaintiff is a citizen of the State of California.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (holding that for diversity purposes, a person is a citizen of the state in which they are domiciled).  Second, for the purposes of diversity of citizenship, a corporation is a citizen of every state or foreign country where it is incorporated and where it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (holding principal place of business for purposes of citizenship "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").  ASI and Menzies are both Delaware corporations with their principal place of business in Texas.  (NOR at ECF No. 1, ¶¶ 21-22.)  Accordingly, ASI and Menzies are residents of Delaware and Texas a no other state for purposes of diversity jurisdiction.

   B.   **Plaintiff's Certified Deposition Transcript is an "Other Paper" Justifying Removal**

   In seeking remand, Plaintiff contends that his deposition testimony does not include new facts or information that were not in his Complaint, such that Defendants cannot rely on his deposition transcript as an "other paper" justifying removal.  Plaintiff is wrong and he conveniently ignores his own testimony.

   As Defendants explained in their removal papers, Plaintiff's allegation in his Complaint that Aguilera "repeatedly . . . sought to obstruct [his] return to work" was ambiguous, thereby necessitating

his deposition. (Notice of Removal at ¶ 42.) At deposition, when asked what specifically Plaintiff believed constituted Aguilera's efforts to "obstruct [his] return to work," Plaintiff testified: "Well, she . . . used [the] word 'voluntary resignation' every time. I felt threaten[ed] because I don't resign, at all, or voluntary resign." (Jackson Decl. ISO Notice of Removal, Ex. I at 206:25-207:7.) Plaintiff's testimony clarifies both the basis and scope of his harassment claim against Aguilera such that it *does* constitute new information – particularly when viewed against the litany of cases indicating the high burden to establish fraudulent joinder based on the pleadings. To be sure, Plaintiff's Complaint separately alleges that Aguilera "continually threatened Plaintiff with his 'voluntary resignation'." However, Defendants had no way of knowing that Plaintiff would effectively admit that his allegation regarding Aguilera obstructing his return work is entirely subsumed by his allegation regarding Aguilera's alleged "threats" of voluntary resignation. The Court should not permit Plaintiff to weaponize this ambiguity in an effort to defeat removal jurisdiction; indeed, accepting Plaintiff's argument that his deposition admissions add nothing to his pleadings and cannot support removal would put employers like Menzies in the impossible scenario of having to pursue their right to litigate in federal court where diversity jurisdiction exists only at the pleading stage and not having the ability to do so once the actual evidence unambiguously demonstrates fraudulent joinder has occurred.

Secondarily, fraudulent joinder requires an inquiry as to whether there is a non-fanciful possibility that Plaintiff could amend the complaint to state a claim against the resident defendant. *See Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548, 550 (9th Cir. 2018); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Here, Plaintiff's deposition testimony provides new information insofar as it establishes the scope of his communications with Aguilera that forecloses his possibility of amending the Complaint to allege verbal abuse, insults, or derogatory remarks based on his protected characteristics that could support a harassment claim on a theory of personal liability. (*See* Notice of Removal at ¶ 35.) Accordingly, Plaintiff's certified deposition transcript is an "other paper" justifying removal here.

C. **Defendants' Receipt of a Rough Draft Deposition Transcript Does Not Render Their Removal Untimely**

Plaintiff misguidedly argues that removal was untimely due to Defendants' receipt of a rough

draft deposition transcript.  Plaintiff relies on *David v. C.H. Robinson Int'l, Inc.*, No. CV 18-3268 FMO (EX), 2018 WL 3213716 (C.D. Cal. June 29, 2018)—an unreported opinion from another district court, which is not binding on this Court.  *See Starbuck v. City & Cnty. of San Francisco*, 556 F.2d 450, 457, n.13 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another"); *McCann v. Alaska Airlines, Inc.*, 758 F. Supp. 559, 566, n.3 (N.D. Cal. 1991) (unreported and out of circuit district court decision "in either case is not binding on this court"); *see also Aguilar v. Boulder Brands, Inc.*, No. 3:12-CV-01862-BTM, 2014 WL 4352169, at *9 (S.D. Cal. Sept. 2, 2014) (explaining that an unreported district court decision is not binding precedent).  *David*'s conclusion regarding rough deposition transcripts is antithetical to the more recent Ninth Circuit decision that adopted the "unequivocally clear and certain" standard for determining timeliness of removal under Section 1446(b)(3).  *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021).  In adopting this stringent standard, the Ninth Circuit did so in part because it "guard[s] against premature and protective removals and minimiz[es] the potential for a cottage industry of removal litigation," and thereby "assur[es] that removal occurs once the jurisdictional facts supporting removal are evident." *Id*. (citation omitted).  A rough deposition transcript *could* contain substantive differences compared to a certified deposition transcript and implicate a defendant's grounds for removal.  Accordingly, Plaintiff's assertion here that "there are no substantive differences between the testimony contained in the rough transcript and the excerpts included in Defendants' Notice of Removal" (Mot. at 12) misses the point.

Not only does Defendants' removal within thirty days of receipt of the certified deposition transcript accord with the policy rationales behind the Ninth Circuit's timeliness standard, it avoids the problem that rough draft deposition transcripts are inadmissible – meaning Menzies could not have properly removed relying on the rough transcript and Plaintiff surely would have raised that as a defect, making his claim that Menzies should have used the rough transcript for removal disingenuous.  *See Orr v. Bank of Am.*, NT & SA, 285 F. 3d 764, 773-74 (9th Cir. 2002) (explaining that authentication is a condition precedent to admissibility and that an extract from a deposition is not properly authenticated if it does not have a reporter's certification); National Court Reporter Association Code of Professional Ethics, COPE – Guidelines for Professional Practice, (last visited April 25, 2024) ("The uncertified transcript may contain errors, some of which could change the accuracy or meaning of the testimony.

An uncertified transcript may not be filed with the court."). Accordingly, the Court should find that Defendants' notice of removal was timely based on receipt of the certified deposition transcript.

### D.  Aguilera's Citizenship Cannot Defeat Diversity Because She is a Sham Defendant

Contrary to Plaintiff's assertions in his Motion, Defendants have established by clear and convincing evidence, through Plaintiff's admissions under oath, that there is no possibility that Plaintiff could prevail on a claim against Aguilera. Plaintiff's Complaint only alleges one cause of action against Aguilera for harassment under the FEHA. Plaintiff's allegations, taken together with his deposition testimony, evidence that Aguilera's conduct was part-and-parcel of a legitimate personnel management decision that is not actionable harassment as a matter of law. *See Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085 RMW, 2009 WL 10692955, at *4 (N.D. Cal. Nov. 5, 2009) (denying motion to remand where plaintiff asserted harassment claim against human resources supervisor who informed plaintiff of his demotion as there were "no facts pleaded to suggest [defendant's] acts were out of meanness or bigotry nor [were] there any allegations that [defendant] made derogatory or ageist comments"). Accordingly, Aguilera is a sham defendant, such that Defendants' removal was proper and the Court should deny Plaintiff's Motion.

#### i.  Plaintiff's Allegations and Deposition Testimony Evidence that He Cannot Prevail on a Harassment Claim Against Aguilera

To establish a prima facie case of hostile work environment harassment, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563 (2019). A hostile work environment claim requires proving that the "harassing behavior is pervasive or severe." *Hughes v. Pair*, 46 Cal. 4th 1035, 1042 (2009) (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (2005)). "[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the

meaning of harassment." *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998). In his Motion, Plaintiff contends that Aguilera engaged in conduct going beyond simply carrying out a mundane personnel decision. That conclusion is belied by the evidence and Plaintiff's discussion of authorities including *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996) ("*Janken*"), *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) ("*Roby*"), and *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005) ("*Yanowitz*") are unavailing and misguided.

In his Complaint, Plaintiff alleges he was harassed by Aguilera on the grounds that she: (1) sought to obstruct his return to work; (2) continually threatened him with his 'voluntary resignation' despite multiple written statements that he would not resign; (3) gave Plaintiff unrealistic deadlines for which to decide whether to take over a 50% pay cut or relocate his family across or to another country; (4) ignored and failed to investigate his claim of disparate treatment based upon his disability/medical leave; and (5) terminated his employment. (Complaint at ¶¶ 4, 53.)

At deposition, Plaintiff admitted that he refused work following an unprotected leave of absence and elimination of his position. Specifically, Plaintiff testified at deposition that (1) to be entitled to job protection upon return from his leave of absence, he would have needed to return to work before his FMLA/CFRA leave expired, (2) he understood he had exhausted his entitlement to FMLA/CFRA leave as of May 6, 2022, (3) as of May 7, 2022, he understood he did not have job protection rights such that return to his General Manager position was not guaranteed, (4) he did not return from leave until December 20, 2022, by which point his General Manager position had been eliminated, and (5) upon his return, he refused vacant positions at the San Francisco location and rejected available manager-level positions outside California offered to him. (Jackson Decl., ¶ 9, Ex. H, Sha Dep. Tr. at 116:12-16, 128:5-8, 129:9-14, 156:5-9, 166:3-14, 171:20-172:1, 173:5-8, 178:21-179:3, 181:1-5, 187:8-189:3, 191:8-25.) Aguilera gave Plaintiff multiple days to accept available positions at the San Francisco location or to consider management-level positions (which he requested) at other locations. (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 158:11-15, 167:19-168:11, 182:5-12; Jackson Decl., ¶ 10-11, Ex. I-J; Sha Dep. Ex. 22.)

No authority supports Plaintiff's theory of personal liability for harassment where a human resources manager (i) offers an employee multiple positions and informs the employee of other available

positions within the employer's network, following the employee's return from a 7-month non-job-protected leave of absence and elimination of the employee's position, (ii) gives the employee multiple days to consider the same, and (iii) requests the employee's voluntary resignation when the employee refuses to accept the available positions. To that end, Plaintiff's reliance on *Janken* is wholly misplaced. *Janken* distinguished the factual basis to support a claim for harassment, rather than discrimination, and observed:

> "Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management. Every supervisory employee can insulate himself or herself from claims of harassment by refraining from such conduct."

*See Janken*, 46 Cal. App. 4th at 64. Plaintiff's own testimony and his Motion confirm that Aguilera never made a negative statement related to his protected status, and thus she is "insulate[d] . . . herself from claims of harassment by refraining from such conduct. The Court further identified that "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Id.* at 65. Yet Plaintiff has only alleged, and further clarified and confirmed in his deposition testimony, such "commonly necessary personnel management actions" that do not come within the meaning of harassment. In Plaintiff's Motion to Remand, he characterizes Aguilera's offer of "job or project assignments" and "office or work assignments"—which he characterizes as "placing an inordinate amount of pressure on him" by giving him less time to decide" than he desired—as somehow "unnecessary activity." *Janken* at 65; Motion at 14-15. Plaintiff's testimony further belies the arguments presented in the Motion—namely (1) he worked in a position of superior authority to Aguilera and she had no supervisory authority over him; (2) he admitted at deposition that he believes Aguilera did not have authority to even make a termination decision, that he did not know the reason Menzies terminated his employment; (3) Aguilera was simply performing her regular duties as a

1  Human Resources Manager with respect to her communications to him regarding the company's
2  decision; and (4) he admitted that Aguilera's communication of termination decisions to employees was
3  an ordinary function of her position. (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 89:11-94:8; 97:12-
4  99:17; 106:8-13; 165:9-166:9; 207:17-208:17.

5        In *Roby*, the California Supreme Court has held that personnel management decisions can
6  provide evidence of harassment in addition to discrimination. *Roby*, 47 Cal. 4th at 707-08. The Court
7  found that some actions that the supervisor took with respect to the plaintiff were "best characterized as
8  official employment actions rather than hostile social interactions at the workplace" but that they may
9  have contributed to the hostile message the supervisor was expressing to the employee "in other, more
10 explicit ways." *Id*. at 709. These "other, more explicit ways" in *Roby* included negative comments
11 about the plaintiff's body odor, calling the plaintiff "disgusting" based on sores on her arms related to
12 her disability, openly ostracizing the plaintiff in the office, making facial expressions of disapproval
13 when the plaintiff took rest breaks necessitated by her disability, and other similar acts. *Id*. at 711. The
14 Court concluded that "acts of discrimination can provide evidentiary support for a harassment claim by
15 establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby
16 permitting the inference that rude comments or behavior by that same manager was similarly motivated
17 by discriminatory animus." *Id*. Yet here Plaintiff did not identify a <u>single comment or action</u> that
18 remotely approaches the "other, more explicit ways" identified in *Roby*.

19       In *Yanowitz*, the California Supreme Court held that an employee presented sufficient evidence
20 to satisfy the adverse action element of her prima facie case under the FEHA. *Yanowitz*, 36 Cal. 4th at
21 459-60. The record established that plaintiff's employer over a period of months engaged in a campaign
22 to solicit negative feedback from plaintiff's subordinates, criticized plaintiff verbally and in written
23 memos based on information obtained from plaintiff's subordinates, refused to allow plaintiff to answer
24 the charges leveled against her, impliedly threatened plaintiff's termination, and imposed restrictive
25 directives regarding plaintiff's future performance and to impair her effectiveness with her staff. *Id*.

26       The comments in *Roby* evincing an abusive message based on the employee's protective
27 characteristics and the actions in *Yanowitz* that threatened to derail the employee's career and have no
28 analogue to Aguilera's implementation of personnel management decisions here following Plaintiff's

refusal to accept available positions upon return from a non-job-protected leave of absence. Plaintiff's deposition testimony confirms that Aguilera did not make any rude comments based on Plaintiff's protected characteristics or engage in such behavior related to the same.[1] Because Plaintiff testified to the scope and interactions with Aguilera, there is no possibility that he can amend his Complaint in good faith following his deposition admissions to allege additional facts to state a claim against Aguilera for harassment. (Jackson Decl., ¶ 10, Ex. I. Sha Dep. Tr. at 204:18-205:1, 205:11-24.)

Plaintiff's contentions that Aguilera allegedly ignored and failed to investigate his claim of disparate treatment (which he made only after Menzies eliminated his position) and instead responded by terminating his employment are commonly necessary personnel actions insufficient to state a harassment claim as a matter of law. *See Cofer v. Parker-Hannifin Corp.,* 194 F. Supp. 3d 1014, 1021 (C.D. Cal. 2016) (dismissing hostile work environment harassment claim against supervisor where plaintiff alleged, inter alia, "his discrimination claims were not investigated" and he was terminated, as these official employment actions were personnel-related decisions insufficient to state a claim); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1330-31 (1996) (explaining that a supervisor's failure to address employee complaints is a personnel decision, not harassment). Indeed, Plaintiff admitted that Aguilera's communication of termination decisions to employees was an ordinary function of her position. (Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 92:10-93:25.)

### ii. **Plaintiff's Argument that He Needs to Depose Aguilera Does Not Justify Remand**

Plaintiff contends that "Defendants have impeded Plaintiff's ability to depose "anyone at Menzies." This is simply not true. Menzies rightly took the position that it would produce witnesses

---

[1] Plaintiff admitted that through December 13, 2022, he (1) had not formed an opinion that anyone at Menzies harbored animus towards him because of his medical condition or need for time off, including Aguilera, and (2) could not identify any comments or statements that anybody from Menzies made to him that he found to be inappropriate remarks concerning his medical condition or need for time off. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 154:20-155:10.) Plaintiff then testified that, after December 13, 2022, his next communication with anyone at Menzies was when he returned on December 20, 2022. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 156:5-9.) Plaintiff's testimony regarding his communications with Aguilera on December 20, 2022 does not evince Aguilera made any hostile comments to Plaintiff nor any improper action attributable to Aguilera that sent a demeaning message to him or other employees. (Jackson Decl., ¶¶ 10, Ex. I, Sha Dep. Tr. at 156:10-159:21.) The same is true for Plaintiff's testimony regarding any communications he had with Aguilera thereafter. (See generally, Jackson Decl., ¶ 10, Ex. I, Sha Dep. Tr. at 173:9-174:24, 176:2-191:25, 193:9-199:2, 203:10-15; Jackson Decl., ¶ 10-11, Ex. I-J, Sha Dep. Ex. 22).

after it completed Plaintiff's deposition because it was unable to be completed in one day (due in large part to Plaintiff's refusal to provide direct answers to questions and to stay on topic). Plaintiff also conveniently omits reference to the fact that Menzies offered to "coordinate [the depositions] and even allow them to run back to back on consecutive days," but Plaintiff did not accept that proposal. Moreover, insofar as Plaintiff takes the position that he needs to take Aguilera's deposition because the evidence on the issue of whether Aguilera's routine personnel decisions constitute harassment is "incomplete," it belies his prior argument that Menzies' removal was untimely.

## V.   CONCLUSION

Based on the foregoing, Defendants request that the Court deny Plaintiff's Motion to Remand.

DATED: May 3, 2024

**FOLEY & LARDNER LLP**
CHRISTOPHER WARD
KEVIN JACKSON


/s/ Kevin Jackson
KEVIN JACKSON
Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC.; MENZIES AVIATION (USA), INC.; TRACY AGUILAR