1 | Gary Brotman (SBN 287726)
gary@marqueelaw.com
2 | Diego Gallego Gómez (SBN 337395)
diego@marqueelaw.com
3 | MARQUEE LAW GROUP, A Professional Corporation
9100 Wilshire Boulevard, Suite 445 East Tower
4 | Beverly Hills, California 90212
5 | (310) 275-1844 telephone
(310) 275-1801 fax
6 |
7 | Attorney for Plaintiff
GEARY SHA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEARY SHA, an individual;<br><br>Plaintiff,<br>vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; MENZIES AVIATION (USA), INC., a Delaware Corporation; TRACY AGUILERA, an individual; and DOES 1 through 50, inclusive.<br><br>Defendants. | United States District Court<br>Case No.: 3:24-cv-01738-EMC<br><br>San Francisco Superior Court<br>Case No.: CGC-23-606989<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND CASE**<br><br>Date:　　June 13, 2024<br>Time:　　1:30 p.m.<br>Judge:　　Honorable Edward M. Chen<br>Location:　Phillip Burton Federal Building |

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

The opposition filed by Defendants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc. (collectively "Menzies") and Menzies' human resources manager, Tracy Aguilera ("Aguilera"), fails to establish that removal to this Court was timely and proper. As described below, Defendants' arguments fall flat, and this case should be remanded to the San Francisco Superior Court.

First, there is nothing "paradoxical" about Plaintiff's Motion. Plaintiff simply makes alternative arguments. Plaintiff argues that, accepting *arguendo* Defendants' basis for removal, Defendants' removal was untimely. In the alternative, Plaintiff argues that Defendants have failed to establish that there is "no possibility" that Plaintiff could maintain a harassment cause of action against Aguilera, the non-diverse defendant. And, even if on the evidence currently before the Court, the Court believes a harassment cause of action could not succeed, Plaintiff argues *in the alternative* that the Court may not properly determine at this juncture that there is "no possibility" that the cause of action could not be established, since Plaintiff has not been able to depose Aguilera or others at Menzies.

Second, Plaintiff has put forth facts and theories demonstrating that there is a "non-fanciful" possibility that Plaintiff will be able to maintain a harassment cause of action against Aguilera. Plaintiff alleges that Aguilera engaged in activities that were not required to simply carry out her job duties, including placing severe pressure on Plaintiff by giving him unreasonable deadlines to make life-altering decisions, while threatening him with "voluntary resignation" if he failed to do so. Defendants have failed to show that any of the above was necessary to Aguilera's job performance. Thus, Aguilera is not a "sham defendant."

Third, Defendants still have not shown why they did not remove this case within 30 days of receiving Plaintiff's Complaint. Defendants' only argument is that there was "ambiguity" in the Complaint as to Plaintiff's allegation that Aguilera "repeatedly…sought to obstruct Plaintiff's return to work." (Complaint, ¶ 53.) But when read in the context, it is clear that this phrase in the Complaint was referring to the facts laid out in prior paragraphs. Indeed, paragraph 53 begins with

-1-

"As described herein above…" Clearly, then, that paragraph was not adding new allegations but was instead summarizing the allegations discussed earlier in the Complaint.

Fourth, Defendants fail to present any authority that only a <u>certified</u> deposition transcript may be an "other paper" for removal purposes. The authority cited by Defendants either is in the wrong context (e.g., summary judgment) or does not support Defendants' position. Indeed, courts have held that inadmissible evidence – including, for example, settlement demands – may be used as an "other paper" to support removal.

For these reasons explained in detail below, Plaintiff respectfully maintains and requests that this case should be remanded to the San Francisco Superior Court.

## II. ARGUMENT

### A. Defendant Aguilera is not a "Sham" Defendant.

Even if Defendants' removal were timely (which it was not), this case would still need to be remanded. Defendants justify their removal by claiming that Defendant Aguilera is a "sham defendant, such that Defendants' removal was proper." (Defendants' Opposition 7:14-15.) However, Defendants fail to show that Aguilera is a "sham defendant."

As noted in Plaintiff's Motion, "[a] defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant; rather, the defendant must also show that there is *no possibility* that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant." *Rangel v. Bridgestone Retail Operations, LLC,* 200 F. Supp. 3d 1024, 1033 (C.D. Cal. 2016) (emphasis in original). "If there is a possibility that the plaintiff could amend his pleading to state a cause of action against the allegedly sham defendant, then remand is warranted." *Id*. at 1034.

Plaintiff's Complaint alleges a harassment cause of action against Aguilera. "Harassment" under FEHA is a type of conduct which is "not necessary to a supervisor's job performance, [as opposed to] business or personnel management decisions [which are] inherently necessary to performance of a … job." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 62-63, (1996). Notably, while *Janken* involved harassment by a supervisor, workplace

-2-

harassment can be committed by coworkers not in a position of authority, a subordinate, and even non-employees. *See* Cal. Gov. Code § 12940(j)(1) (making it unlawful for "any…person" to engage in harassment).

Moreover, while Defendants repeatedly claim that Plaintiff was in a "superior" position to Aguilera, this is rhetorical sleight of hand. While Plaintiff did testify that he had the authority to terminate his subordinates and to have Aguilera carry out those terminations, it is clear that, in the context of *his* termination, Plaintiff was not "superior" to Aguilera. Plaintiff plainly did not have the ability to override his own termination, nor did he have the authority to dictate to Aguilera how to communicate the termination decision, and he certainly did not have the authority to override the extreme pressure that Aguilera exerted on him to either take a huge pay cut or "apply" for other positions out of state (or out of the country), under threat of a "voluntary resignation." Indeed, Plaintiff repeatedly asked Aguilera not to threaten him with "voluntary resignation," but she persisted in using that term. In the context of Plaintiff's own termination and surrounding communications, Plaintiff clearly was not "superior" to Aguilera.

As stated in the Motion, Aguilera engaged in additional, unnecessary activity by placing an inordinate amount of pressure on Plaintiff and making threatening comments to Plaintiff and continuing to make those threatening comments after Plaintiff asked her not to. Aguilera told Plaintiff that his position of General Manager had been eliminated and offered him only two entry level positions: Cargo Loader and Aircraft Fueler. Plaintiff requested other positions which were on a similar level to his General Manager position. Aguilera told Plaintiff there were no openings for positions like that at SFO, but she sent him a list of open positions within the Menzies' network in other states and countries. Defendants mischaracterize the nature of this list and state that Defendants "offered" these jobs to him. (Defendants' Opposition 8:28). These positions were never "offered" to Plaintiff. Instead, Aguilera provided a list of jobs within Menzies that Plaintiff could *apply* to, with no guarantee that he would be hired. And, as Plaintiff alleges in the Complaint and in his deposition, Aguilera only provided him with a few days to make such a life-altering decision, and continually threatened him with "voluntary resignation" and continued using that phrase after Plaintiff protested.

-3-
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND CASE**
Case No. 3:24-cv-01738-EMC

As Plaintiff testified at his deposition, "Three days [is] not enough to think about, to talk to my family, to make that move. That's a gamble too." *See* Notice of Removal, Exhibit I, 168:9-11. Defendants maintain that Aguilera offered Plaintiff sufficient time to re-evaluate his entire career and family life, but the fact is Aguilera continually pressured Plaintiff to make a decision and would only give him a couple of days to decide if he wanted to restart his career at the entry level or apply to other out of state/out of country jobs to try to stay within Menzies (but still be terminated from the SFO location). This is an incredible amount of pressure for any reasonable person, especially when Aguilera continued stating – over Plaintiff's objections – that if he did not respond in time he would be terminated and his termination would be classified as "voluntary" for "refusing work." (Complaint ¶ ¶ 24-29).

Thus, accepting *arguendo* Defendants' assertion that the act of eliminating a position is an ordinary personnel management decision, the way in which Aguilera went about it was not "ordinary" or necessary to this job function. Continuing to threaten Plaintiff with his "voluntary resignation" after being asked to stop using the words "voluntary resignation" because Plaintiff felt threatened each time she stated this, and giving Plaintiff only a couple days at a time to decide the lesser of two evils or to just leave the company Plaintiff thought he would retire from, was completely unnecessary. Defendants have offered absolutely zero evidence to show why this short timeline, and the threatening manner in which Aguilera communicated to Aguilera, was *necessary* to a personnel decision.

It is also unclear why Defendants are so insistent that Aguilera did not make the decision to terminate Plaintiff. Aguilera clearly does not need to be the "decisionmaker" in order for Plaintiff to prevail on a claim of harassment against her. As noted in Plaintiff's Motion, because harassment is defined as actions that are <u>not</u> necessary to carry out personnel or management decisions, it defies logic to tether a finding of harassment to the authority to make the personnel decision.

In any event, regardless of whether Aguilera made the decision to terminate Plaintiff or was directed to do so by another Menzies employee, Plaintiff alleges that Aguilera engaged in conduct that goes beyond simply carrying out a mundane personnel decision as described in detail

-4-

above and in the Motion. As such, Aguilera is properly joined as a defendant in this case, and Aguilera's California citizenship defeats complete diversity.

### i. Defendants Have Prevented Plaintiff from Deposing Aguilera

Defendants have prevented Plaintiff from deposing Aguilera. Plaintiff's deposition by Defendants lasted a full day and walked through the facts spanning the entire employment period up through and after his termination. Defendants are simply feigning an incomplete deposition to impede Plaintiff's efforts to depose anyone from Menzies, but particularly Aguilera. Defendants cite to no authority supporting their claim that a second day of Plaintiff's deposition is required prior to Plaintiff taking any depositions of his own. While Plaintiff contends that the facts already in the record are sufficient to defeat removal, Aguilera's deposition would allow Plaintiff to gather additional evidence regarding the scope of Aguilera's role in Plaintiff's termination, including testing Defendants' contention that everything Aguilera did was simply "performing her regular duties." Thus, to the extent the Court agrees with Defendants that the facts currently in the record do not support a harassment claim against Aguilera, the Court still cannot conclude that there is "no possibility" that Plaintiff will be able to amend his pleading or present additional evidence supporting the harassment cause of action. *Rangel*, 200 F.Supp.3d at 1033-34.

Defendants claim that this argument is somehow "paradoxical" to Plaintiff's argument that Defendants' removal was untimely. But there is nothing paradoxical about these arguments, which are made in the alternative. Plaintiff argues in the first instance that, accepting *arguendo* Defendants' basis for removal (i.e., that the case is removable based on the contents of Plaintiff's deposition testimony, the sole "other paper" relied on by Defendants), Defendants' removal is untimely because (1) there is no new information or evidence contained in Plaintiff's deposition transcript that was not already pled in his Complaint, which was served on Defendants many months before removal; and (2) Defendants failed to remove within 30 days of receiving a rough copy of the deposition transcript. Plaintiff further argues the case is not removable because (1) based on the facts already alleged in the Complaint and in Plaintiff's deposition, Aguilera was properly joined and Defendants have not shown that there is "no possibility" for Plaintiff to establish a cause of action for harassment against Aguilera; and (2) even if the Court believes the

facts currently in the record are not sufficient to support the harassment claim, the fact that Aguilera's deposition has not been taken precludes a finding that Defendants have made a "clear and convincing" showing that there is "no possibility" that Plaintiff cannot state a claim against Aguilera, as the record is incomplete. There is no rule of court, Federal Rule of Civil Procedure, or other authority preventing Plaintiff from arguing in the alternative like this.

### B. Plaintiff's Deposition Testimony Did Not Include New Facts or Information

Defendants assert that they "first" discovered this case was removable after receiving Plaintiff's deposition transcript, and thus, the transcript is an "other paper" on which Defendants could rely to remove this case. But as explained in the Motion, in order to rely on an "other paper" to justify removal, Defendants must show that the "other paper" actually contained new facts giving rise to removability. Defendants fail to make this showing, as none of the testimony highlighted by Defendants differs from the allegations in Plaintiff's Complaint.

Recognizing this, Defendants seize on the purported "ambiguity" in the Complaint's assertion, at paragraph 53, that Aguilera "repeatedly…sought to obstruct Plaintiff's return from work." Defendants complain that Plaintiff seeks to "weaponize" this ambiguity to defeat removal. (Opp. at p. 5.) This is just more distracting rhetoric.

Plaintiff was not hiding the ball in his Complaint. When read in context, it is clear that this supposedly "ambiguous" assertion was simply part of a summary of the factual allegations made earlier in the Complaint. Indeed, paragraph 53 begins with "As described herein above…," signaling that it is referencing allegations made in prior paragraphs. Paragraph 53 is also contained within the Second Cause of Action, <u>not</u> in the "General Allegations" section of the Complaint, which spans more than 20 paragraphs and roughly four-and-a-half pages of text. (*See* Complaint, ¶¶ 12-32.)

Simply because Plaintiff specifically laid out multiple allegations and then, more than 20 paragraphs later, summarized them in one sentence using slightly different phrasing, does not render that sentence ambiguous. Moreover, if Defendants were truly perplexed by this "ambiguity," thought that the Complaint lacked the requisite factual showing to bring a legally cognizable claim of harassment against Aguilera, and believed Aguilera to be a "sham

-6-

defendant" as they now contend, the proper course of action would have been to demur and/or remove at that point in time, to prompt Plaintiff to amend his Complaint to explain the supposed ambiguity.

As demonstrated above and within the moving papers, there are no "new facts" or "new information" in Plaintiff's deposition that were not already alleged in Plaintiff's Complaint. As a result, Defendants may not rely on the deposition transcript as an "other paper" justifying removal after the initial 30-day period under 28 U.S.C. § 1446(b)(3) because they have had this information since they were served with the lawsuit.

### C. Defendants Fail to Provide Any Authority That a Rough Transcript is Insufficient as an "Other Paper"

Defendants contend that the rough draft transcript of the deposition did not start the 30-day window of removal. (Defendants' Opposition 6:28-7:1). To support their claim, Defendants cite to *Orr v. Bank of Am., NT & SA*, 285 F. 3d 764, 773-74 (9th Cir. 2002) for the proposition that authentication is a condition precedent to admissibility. (*Id.* at 6:23-26). However, *Orr* deals with the admissibility of evidence submitted in support of a motion for summary judgment. The admissibility standard on removal is not identical to the admissibility standard for submitting evidence in support of an MSJ. Indeed, courts have held that otherwise inadmissible evidence – such as settlement demands – may be used to establish diversity jurisdiction. *See*, *e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (recognizing that a settlement demand letter may be used to establish the amount in controversy for purposes of removal).

Defendants have not provided any legal authority that only a <u>certified</u> transcript, and not a rough transcript, can be an "other paper" under Section 1446(b). Defendants also point to *Dietrich v. Boeing Co.*, 14 F.4th 1089 (9h Cir. 2021), but that case did not touch on the issue of whether a rough transcript may qualify as an "other paper."

Defendants also attempt to disparage *David v. C.H. Robinson Int'l, Inc.*, No. CV-18-3268-FMO, 2018 WL 3213716 (C.D. Cal. Jun. 29, 2018), relied on by Plaintiff in his Motion, as an "unreported opinion from another district court, which is not binding on this Court." (Opp. at p. 6.) To be sure, another district court's decision is not binding on this Court. But Defendants'

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND CASE**
Case No. 3:24-cv-01738-EMC

implication that an "unreported" district court decision is somehow less persuasive than a "reported" district decision is unfounded. The only distinction between the two is whether the editors at West Publishing decide to include the decision in the Federal Supplement.[1] *See*, *e.g.*, *Lebron v. Sanders*, 557 F.3d 76 at FN 7 (2nd Cir. 2009) ("We do not suggest that published district court opinions are more persuasive than unpublished district court opinions; nor do we discourage district courts from citing to an unpublished opinion that is, for any reason, more appropriate than a published one.") Thus, the fact that *David* is "unreported" has no bearing on its persuasive value.

Defendants next argue that a rough draft transcript "*could* contain substantive differences compared to a certified deposition transcript and implicate a defendant's grounds for removal." Defendants' Opposition 6:15-16). Certainly, in a case where a rough draft contains substantive mistakes and the certified copy corrected those mistakes, then the certified copy rules. This is no such case. Here, Defendants do not dispute that the rough draft accurately captured the relevant portions of the testimony and contained no differences from the certified copy. Surely Defendants, and their sophisticated legal team who conducted the deposition, were able to review the deposition transcript rough draft and realize it was in accordance with the deposition they had just conducted. Thus, when Defendants received the certified copy of the transcript, it did not provide any new information. Plaintiff does not disagree that a certified copy of the transcript *can* constitute an "other paper" under Section 1446(b) in cases where, for example, a rough copy is not ordered, or where the certified copy presents new information (i.e., new or different testimony) not contained in the rough transcript. But that is not the case here. In this case, the rough draft constitutes an "other paper" under Section 1446(b), and therefore, once Defendants received the rough draft, the 30-day removal period commenced.

---

[1] Ironically, Defendants cite to an unreported decision, *Aguilar v. Boulder Brands, Inc.*, No. 3:12-CV-01862-BTM, 2014 WL 4352169 (S.D. Cal. Sept. 2, 2014), for the proposition that "an unreported district court decision is not binding precedent." (Opp. at p. 6.)

## III. CONCLUSION

For the foregoing reasons and those explained in the Motion, Plaintiff respectfully requests that the Court grant his motion to remand, and to issue an order remanding this action to the San Francisco Superior Court.

Date: May 10, 2024

Respectfully Submitted,

MARQUEE LAW GROUP, APC

_____
Gary S. Brotman
Diego Gallego Gómez
Attorneys for Plaintiff Geary Sha